J. B. Flannery, Respondent, v. The Kansas City, St. Joseph & Council Bluffs Railway Company, Appellant.

Kansas City Court of Appeals, June 30, 1886.

1. Practice—Demurrer to Evidence—Negligence—Case Adjudged. Where there was sufficient evidence to have warranted the jury in finding that the cow belonging to plaintiff was struck by one of defendants trains; yet there was no evidence tending to show any actionable negligence on the part of those in charge of the train; and no proof from which the jury could have inferred that the ser-

vants of defendant were negligent in not discovering the animal sooner,—the court should have sustained the demurrer to the evidence, interposed by defendant, in this case.

2. ———— SPECIAL VERDICT ON PARTICULAR ISSUES—ANSWERS OF THE JURY—EFFECT OF.—Where the jury, in answer to questions, professing to elicit specific answers as to particular issues, say, "we don't know," this is equivalent to finding that the facts were not satisfactorily proved by the plaintiff, upon whom rested the burden of proof (in this case), and entitled the defendant to a judgment on the special verdict.

3. ———— ———— CHARACTER OF QUESTIONS TO BE SUBMITTED—PURPOSE OF THE STATUTE.—The statute authorizing the submission of certain facts for the special finding of the jury, contemplates that the questions submitted should be limited to the material issues made in the pleadings, and the facts essential to support the verdict one way or the other, and the questions should be such as are intelligible to ordinary apprehension, and in such form as to admit of a categorical answer, under the evidence. The proper practice for taking advantage of the *abuse* of this statute, would be for the party objecting to state his objections at the time the questions are proposed for submission, and to except to the action of the court in overruling the objections.

4. PRACTICE—RULE FIFTEEN OF THIS COURT—RECORD.—Where the requirements of rule fifteen of this court are complied with by the appellant, and the respondent or defendant in error does not file any additional abstract, this court will accept that of the appellant or plaintiff in error as containing a correct statement of the record, and will not go behind this abstract to look into the transcript to see whether it and the abstract correspond. *Per Philips, P. J., and Hall, J.; Ellison, J.,* files *separate* opinion.

APPEAL from Platte Circuit Court, HON. GEORGE W. DUNN, Judge.

*Reversed.*

The case is stated in the opinion.

EDWARDS & ELLISON, and STRONG & MOSMAN, for the appellant.

I. The *first* instruction given for plaintiff was error. It left the jury to conjecture what acts or omissions constituted negligence. *De Witt v. Railroad,* 50 Mo. 302 ;

*Rains v. Railroad,* 71 Mo. 164; *Goodwin v. Railroad,* 75 Mo. 73; *Yarnall v. Railroad,* 75 Mo. 575..

II.   The *third* instruction for plaintiff was also error. It declared, in effect, that proof of the injury raised a presumption of negligence.   This is a common law action; negligence cannot be presumed.   *Swearingen v. Railroad,* 64 Mo. 73; *McPheeters v. Railroad,* 45 Mo. 22; *Lloyd v. Railroad,* 49 Mo. 199; *Meyer v. Railroad,* 35 Mo. 352.   Besides, it contradicted defendant's *fifth* instruction, and emphasized the error.

III.   The special findings were equivalent to a finding that plaintiff has not proved the negligence alleged in the complaint.   *Morrow v. Commissoners,* 21 Kan. 484; *Railroad v. McCandliss,* 33 Kan. 366.   They were *evasive* and will not support a general verdict.   *Hopkins v. Stanley,* 43 Ind. 553.

IV.   The motion for judgment on the special findings in defendant's favor should have been sustained. Laws of Mo., 1885, p. 214; *McGonigle v. Gordon,* 11 Kansas, 167.   The motion *in arrest* should have been sustained.   Cases cited *supra.*   So, also, the motion for new trial should have prevailed.   There should be final judgment here for defendant.

C. W. FREEMAN, for the respondent.

I.   Plaintiff's *first* instruction was properly given. The issue was whether defendant's servants saw the animals, or, by the exercise of ordinary caution and watchfulness, might have seen them in time to have prevented the injury.   The jury found this issue for the plaintiff.   *Isbell v. Railroad,* 60 Mo. 475; *Kendig v. Railroad,* 79 Mo. 207; *Pryor v. Railroad,* 69 Mo. 215; *Cadmus v. Railroad,* 18 C. L. J. 13.

II.   There being evidence to sustain the finding this court will not inquire as to the *weight* of evidence. *Hamilton v. Berry,* 74 Mo. 176; *Appleby v. Brock,* 76 Mo. 314; *Hodges v. Black,* 76 Mo. 537; *Grove v. Kansas City,* 75 Mo. 672.

III. The *third* instruction given for plaintiff was proper under the evidence in the case, which clearly showed negligence. Negligence is the breach of a legal duty which results in an injury to others. The duty is measured by the exigencies of the occasion. *Railroad v. Jones*, 95 U. S. 439. And if *unusual* precautions are necessary to avoid accidents, the failure to use them would authorize the jury to infer negligence. *Karle v. Railroad*, 55 Mo. 483; *McPheeters v. Railroad*, 45 Mo. 22.

IV. In cases where what constitutes a proper rate of speed depends upon the length and character of a train, *the location and surroundings of the track and other circumstances*, and no law or ordinance regulating the speed is in evidence, *whether* the rate of speed is *dangerous* is a question of *fact for* the jury. *Frick v. Railroad*, 75 Mo. 596.

V. As regards the "special findings" of the jury, they are not inconsistent with the *general* finding—*the verdict*, as the evidence shows. The verdict is for the right party and there is no error of law.

PHILIPS, P. J.—This is an action to recover damages for killing plaintiff's cow, alleged to have been done by one of defendant's trains of cars. The accident occurred inside of the switch limits of the town of Parkville in Platte county, on the eleventh day of June, 1884. The charge is that the injury resulted from the negligence of defendant's servants in charge of the train in managing and running the same.

Judgment for plaintiff, from which the defendant prosecutes this appeal.

At the close of plaintiff's evidence, and again, at the close of all the evidence, the defendant interposed a demurrer to the evidence. This demurrer, we are of opinion, the court should have sustained. When the plaintiff rested, while it may be conceded there was sufficient evidence to have warranted the jury in finding that the cow

was struck by some one of defendant's trains, yet there was not a particle of evidence tending to show any actionable negligence on the part of those in charge of the train. It did not even appear, at the close of plaintiff's evidence, that the engineer or fireman saw the cow before or at the time of the collision, or that they could have avoided the injury had they seen the cow. Nor was there any proof from which the jury, without the merest speculation, could have inferred that the servants of defendant were negligent in not discovering the cow sooner. There was clearly no case made out up to this point in the progress of the trial. *Lord v. Ry. Co.*, 82 Mo. 139.

The only remaining question, therefore, for determination is, did the defendant's evidence (which it unnecessarily introduced), so supplement the proof submitted by plaintiff as to supply the essential omission on the issue of negligence?

The evidence tended to show that the Missouri river at Parkville runs nearly south within a few feet of the main track of the defendant; its embankments are very high. On the west side of the defendant's track, from the Parkville depot to the bridge, there is a narrow strip of ground which comes to a point at the mouth of the ravine where the bridge is located. This tongue of land widens towards the depot, northward, to ten or twelve feet in breath; its width in dry land varies according to the rise and fall of the river. A switch extends along the east side of the main track about ten feet from it, from near the depot southward, and extends across the ravine on a separate bridge (trestle). On this switch track some of the witnesses testified they saw a freight (construction) train standing about five or six o'clock, A. M., on the morning of the accident. George Davis testified that the same train was standing at the same place all night. This train of freight (construction) cars formed a barrier to the east of the main track, so that cattle standing on the tongue of land ne

the bridge (trestle) could not pass across the main track eastward, and could only escape from their position by crossing the ravine at its mouth, or jumping into the river. At the time of the injury the water in the river was high and backed up the ravine. So that, as the witnesses testified, the cows could not cross at the mouth of the ravine. Thus, the river on the one side, the switch on the other, upon which was standing all night a construction train, laid up for the night, extending unbroken from near the south end of the depot to and across the trestle over the ravine, and the ravine spanned by an open trestle, formed a sort of V-shaped inclosure, the open end of which was at the depot, with the main track running through the middle. The engineer and fireman testified that they were at their posts of duty, and that the cattle were within the inclosure made by the river, cars, etc., and that the cattle were lying down in the shade of certain large cotton wood trees, making it difficult to see them on approaching. On approaching the station the engineer and fireman testified that the signal was given, and the train slowed until its speed was reduced to about six or eight miles an hour. On coming around a curve at this point the fireman called for a lookout, and the engineer then discovered the cattle lying down. As soon as they got up he gave the whistle alarm. The cattle started for the culvert, so as to satify the engineer that a collision would likely occur as they emerged on the track. Being satified that he could not halt his train in time to avoid the collision, and that there was more danger to his train in colliding at the slow rate he was running, he put on the steam and knocked the cow into the river, where she was found the next morning.

This is the substance and effect of the evidence. Wherein there is a single fact to warrant the verdict of the jury, we are unable to discover. The case, as indicated by one of the instructions given and those refused, as well as the argument of respondent's counsel at this bar, was tried on the theory, that it was the duty of th

engineer to have been on the lookout at that point for the presence of these cattle, and if he could have discovered them near the track in time to have stopped his train before the collision, the defendant is as much liable as if the engineer had wilfully run the cow down after discovering her on the track. This is not the law, as applied to the facts of this case. There was no evidence that the engineer knew that these cattle were in the habit of resting over night at this point. Nor is there any evidence that they ever were there before. It was a point where defendant was not required to fence its road. Railroad companies are not held to anticipate that cattle will be at such point in the night time. Nor are they required, under all circumstances, even on seeing cattle grazing or reposing near the track, to sound an alarm or to slow up the train. As to cattle, under circumstances like those disclosed by this record, no negligence is imputable to the engineer until he discovers that the cattle will likely go upon the track. *Young v. Ry. Co.*, 79 Mo. 336 ; *Milburn v. Ry. Co.*, 21 Mo. App., and *Sloop v. Ry. Co.*, 22 Mo. App. 593.

The evidence failing to show that the train could have been stopped in time to have averted the injury after the discovery of the danger, the plaintiff failed to make out a case.

I. Among the questions of fact, submitted for the finding of the jury, and the answers thereto, are the following :

"10. Could the train have stopped in time to have saved the animals, after the engine reached the point at which they could have been seen by the engineer ? A. We don't know."

"11. Was the engineer at his post of duty, and discharging his duties with reasonable care, when they approached the point of injury in question ? A. We don't know."

"12. How far were the cows from the engine, when first discovered by the engineer ? A. We don't know."

"13. If the engineer was guilty of any negligent act or omission in the running of his train, prior to seeing the animals on the track, which contributed to the injury, state what it was.    A.    We don't know."

"14. Did the engineer in charge of the train, after he became aware that the animals were upon the track, fail to take any precaution or fail to do anything, which a man of reasonable care and prudence, would have taken or done, under the surrounding circumstances, and which, if done or taken, would have prevented the injury? If so, state what it was.    A.    We don't know."

The answers made, " We don't know," were equivalent to a finding that the facts were not satisfactorily proven by the plaintiff, upon whom rested the burden of this proof; and entitled the defendant to a judgment on the special verdict. *Morrow v. Com'rs of Saline county*, 21 Kas. 484; *A., T. & S. F. Ry. Co. v. McCandliss*, 33 Kas. 366; *Hopkins v. Stanley*, 43 Ind. 554.

II. As the statute authorizing the submission of certain facts for the special finding of the jury is new in this state, we deem it well to say, at the outset, that this statute is not to be made a snare to entrap and mislead the jury, nor an instrument in the hands of the practitioner for cross-examining the jury on minor and unimportant details. The questions submitted should be strictly limited to the material issues made in the pleadings, and the facts essential to support the verdict, one way or the other. They should be as few in number as will attain the ends of justice, so as to avoid confusing the jury and leading them into unprofitable wrangling over non-essentials. And especially should the questions to be answered be intelligible to the apprehension of the average juror, and be in such form as to admit of a categorical answer under the evidence.

Some of the questions, other than the foregoing, submitted in this case, are violative of these rules. The proper practice for taking advantage of the abuse of this statute, in this respect, would be for the party objecting

to state his objections at the, time the questions are proposed for submission, and to except to the action of the court in overruling the objections. If, however, an issue of fact should thus be submitted to the jury outside of the pleadings, or wholly irrevelant and immaterial, the failure of the jury to make answer, one way or the other, or any finding they might make thereon, should be disregarded in rendering judgment on the finding.

It being clear, from the answers made by the jury to important questions of fact, that the plaintiff failed to make out a case against the defendant, the judgment should have been entered for the defendant. The judg-ment of the circuit court is accordingly reversed. Hall, J., concurs in the result, on the ground expressed undei the second point of the opinion. Ellison, J., presents separate opinion.

ELLISON, J.—In this case, what purports to be a bill of exceptions, has been considered by the majority as a bill of exceptions proper, because it has been so considered by the counsel on either side. The fact is, the paper purporting to be a bill of exceptions is not signed by the judge of the trial court, and, therefore, is not a part of the record in the case. Sections 3635–3639, Revised Statutes; *State v. Jones*, 58 Mo. 506; *Smith v. Ry. Co.*, 55 Mo. 601. The abstract of the record which counsel are to present to this court, under our rule, *presupposes there is a record.*

Parties will not be permitted to fabricate a record. They cannot, by agreement, impose on the court, as a record, that which, by law, cannot be. They cannot, even by agreement, dispense with briefs and assign-ments of errors. *Snyder v. Hopkins*, 39 Mo. 418; *Dissee v. Frank*, 52 Mo. 551.

We cannot try a sham case because parties agree we may.

I deem the decision in this cause contrary to the decisions in *State v. Jones*, 58 Mo. 506, and *Smith v. Ry.*

*Co.*, 55 Mo. 601, and that the case should be certified to the supreme court.

PHILIPS, P. J., and HALL, J.—It is suggested by Ellison, J., since the opinion herein was written, that the transcript shows that what purports to be the bill of exceptions does not appear to be signed by the judge of the circuit court; and, therefore, we ought to treat the case as if no bill of exceptions were in the record. By rule fifteen, of this court, it is provided, in substance, that : In all cases the appellant or plaintiff in error shall file with the clerk of this court, on or before the day on which the cause is docketed for hearing, five copies of a printed abstract, or abridgment of the record in said cause, setting forth so much thereof as is necessary to a full understanding of all the questions presented to this court for decision, together with a brief containing in numerical order the points or legal propositions relied on, with citation of authorities, etc. The rule then provides that copies of this abstract, etc., shall be furnished to the opposite party, who shall, within eight days thereafter, deliver to the appellant or plaintiff in error a copy of his brief in response, with briefs and points relied on, "and such further abstract of the record as he may deem necessary," and shall file with the clerk said briefs, etc., before the hearing of the cause. Under this rule this court has repeatedly and uniformily held, that where the respondent or defendant in error does not file any additional abstract, we will accept that of the appellant or plaintiff in error, as containing a correct statement of the record, and that we will not go behind this abstract to look into the transcript to see whether it and the abstract correspond.

The appellant in this case complied with this rule. The respondent filed no counter abstract, controverting the correctness of appellant's abstract, in the particular in question. The abstract expressly states, on page twenty-

VOL. xxiii—9

three, that, "thereupon, in due time, the defendant (the appellant) filed its bill of exceptions." This was accepted as correct in considering the case, and, of course, the transcript was not looked to, any more than in any other case. And now, forsooth, by an accident, it is discovered after the opinion is written, that the bill of exceptions, as copied in the transcript, does not appear to have been signed by the judge, we are asked to hold there is no bill of exceptions.

The respondent, as already stated, made no objection to this recitation in the abstract; he made no point thereon in his brief and argument, but throughout, has treated the case as if the exceptions were duly taken and saved. To allow this point, raised for the first time after the hearing, by one of the court, would, in my opinion, be not only unjust to the appellant, but virtually destroy the purpose of rule fifteen. The record recites that the bill of exceptions was duly presented and signed by the judge, and is made a part of the record. It is quite clear, to my mind, that the omission of the judge's name at the bottom of the bill of exceptions, is a mere clerical mistake in transcribing the record by the circuit court clerk; and had the respondent made any question as to this fact in his brief in response, as he should have done, if any advantage thereof is to be taken, the probabilities are that the whole matter would have been rectified, by appellant, by asking for a *certiorari*, unless respondent had consented to treat the case as if the judge's signature was appended to the bill of exceptions. The acceptance, by respondent, of appellant's abstract, without objection on account of this matter, and treating the case throughout as if the bill of exceptions were regular, should be treated by this court as a waiver, and recognition by him of the fact that the omission of the judge's name was a mere clerical error.

It would now, after the submission of the case, be the grossest injustice to the appellant to allow this objection, raised by one member of the court, *sua sponte*.

This bill of exceptions is not of the nature of a jurisdictional fact, which cannot be waived. It stands, in this respect, as any other matter, to be preserved in the bill of exceptions. This court cannot review the errors arising in the progress of the trial without a motion for new trial, calling attention of the trial court to such error. Yet, if the abstract of record furnished by the appellant showed that this motion was duly filed, overruled, and exception saved, and be not controverted by the respondent, and no point made thereon at the hearing, or in brief, this court would accept that as correct, and would not go to the transcript for the truth. So, if the abstract should set out the instructions, and no denial of their correctness should be made by respondent, we would accept the abstract as true. Any other construction of rule fifteen would practically annul it; and the court would have to go through every transcript in search of errors not relied on by the opposite party.

The opinion of Ellison, J., proceeds upon the assumption that the majority hold that a bill of exceptions not signed in fact by the judge, may become a part of the record by agreement of counsel. This is not the point. We are all agreed that a bill of exceptions must be signed by the judge before it is entitled to record. But the question here is one of practice, under the rules of this court, as to what is the evidence of what the record does contain? The rule says the abstract, on which the parties have agreed. The parties surely could come into this court and stipulate that while the transcript sent up here, through mistake of the clerk, omitted the signature of the judge, as a matter of fact the bill of exceptions was signed by the judge, and this court would accept this as correct, and dispose of the case accordingly, without a *certiorari*.

The effect of respondent's silence, and treating the case as if the bill of exceptions, as stated in the appellant's abstract, was regular, is equivalent to such stipulation. So we hold that no such snap judgment should

· be rendered against appellant as would result from the·
· view of the minority of the court.   In this opinion Hall,
· J., concurs.