ANDREW JACKSON AND WIFE, Respondents, v. THE GERMAN INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, June 6, 1887

1. PRACTICE—DEMURRER TO EVIDENCE, EFFECT OF.—A demurrer to the evidence admits the truth of the facts testified to by the witnesses and every reasonable inference that may be drawn therefrom.

2. PRINCIPAL AND AGENT — GENERAL AND SPECIAL AGENTS — CASE ADJUDGED.—Where the agent of an insurance company was its state agent, clothed with power to make insurance contracts, issue policies and contract in respect of premiums, he was its general agent. Persons dealing with such general agents have the right to act upon the apparent authority of such agents, and are not affected by any limitations placed upon such agents by their principals. In such cases, the acts, conduct, and declarations of such agents, within the scope of their agency, are just as obligatory upon the company as if they proceeded from the principal. Such agents may waive the prompt payment of premium and extend the time of payment, and by their acts, conduct, and declarations, as effectually estop or bind the company, as if done by its managing board.

3. PRACTICE—INSTRUCTIONS— PROOF OF FACTS NOT ESSENTIAL TO RECOVERY.—Where the court, as in this case, by an instruction, imposed upon the plaintiffs the burden of making additional proof of a fact not essential to their right of recovery, when the essential fact was supported by proof, this can constitute no reversible error in defendant's favor.

4. ——— SPECIAL VERDICT—DUTIES DEVOLVING UPON JURIES.—It is not contemplated by the statute authorizing special verdicts, that the jury should be required to report the evidence by which they reached their conclusions. It is a special verdict, and not a report of the evidence by which they reach the verdict.

5. ——— REFUSAL OF INSTRUCTIONS, WHEN PROPER.—It is proper to refuse instructions when all that was valuable and proper in them had already been accorded in other instructions.

APPEAL from Jasper Circuit Court, HON. M. G. McGREGOR, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover on a fire insurance policy. The evidence tends to show that the plaintiffs are husband and wife, colored people, living in the city of Carthage. They were unlettered, and unfamiliar with the transaction of matters pertaining to insurance policies. They owned a small house and some furniture, situated in said town. The defendant had established a general agency for the state (it being a non-resident cor-

poration), at the city of Carthage, in charge of one Calhoon as its agent, who had for an assistant, one Harrison.   In September, 1884, this agent applied to the plaintiffs to take out a policy of insurance in his company on their said property.   They told him they did not have the money, whereat he informed them that the amount of the premium would be only twenty dollars, and that they could have until the first day of December following in which to pay it.

Plaintiffs' evidence tended to show that this agent further said to the husband that he could pay the amount of the premium in work, to be done from time to time for the agent, as it suited him, between that and the next spring.   Thereupon, the plaintiff husband went to the agent's office, and signed, with his mark, such papers as the agent drew up for him.   The plaintiff testified that none of the papers were read to him, but he understood one was a note for the amount of the premium, and the other was some paper connected with the procuring of the policy ; that the agent told him the policy would be made out for him in a few days ; and that, as he had a safe in his office, where he kept policies for others, he would keep the plaintiff's policy for him.   The plaintiffs never saw the policy, and were not made acquainted with its provisions.   On the fifteenth day of November, 1884, Calhoon mailed to plaintiffs the following notice :

"Office of Farm and Dwelling Department of the German Insurance Company.

"Carthage, Mo., November 15, 1884.
"Elvira and Andrew Jackson, Carthage, Mo.

"Your note number 1806, given for insurance in the German Insurance Company, is in my hands for collection, and will become due the first day of December, 1884.   You will please remit the amount to me, at or before maturity, in the inclosed envelope, as instructed herein, and on receipt of the same, your note will be returned to you duly receipted.   You are hereby author-

ized to remit by draft, post-office order, express, or registered letter.

Amount.........................................$20.00
Interest............ .........................  00.00

Total........................................$20.00

"Do not fail to be prompt in sending the amount when due, as you cannot recover, in case of loss, after note comes due, until same is paid.

"Respectfully,

"W. W. CALHOON,

"State Agent.

"P. S. Please return this notice with money."

Upon its receipt, the plaintiff, Andrew, testified that he went to see Mr. Calhoon, and reminded him of his promise in respect of the manner and time of making payment of this premium; and that, thereupon, Calhoon said about the same to him as when he applied for the policy; that he told Calhoon in this conversation that he said he (plaintiff) could have until spring to work it out, and Calhoon said that is all right; that, after this, he did saw wood for Mr. Harrison, the assistant, amounting to $3.75, which sum was to be credited on the policy; that, about January 1, he sawed wood for Harrison, amounting to the sum of five dollars, which was to be credited on the note, also; but that, greatly needing the money to buy something to eat, he asked Harrison to let him have the money, and that he would do other work thereafter in payment of the note, and that Harrison agreed to this. Harrison admitted in his testimony this occurrence, but further testified that he advised plaintiff that the policy was not binding unless the premium was paid. The house burned in February, and when plaintiff applied to the agent for his policy, he was told by him that he had sent the policy and note on to the company to be cancelled, as the premium had not been paid.

VOL. xxvii—5

After the fire a few days, the plaintiff did some work for Calhoon, which he offered to be credited on the note, and proposed to pay the amount due, but Calhoon refused.

The agent admitted the doing of work by the plaintiff, but claimed that it was done in November, just prior to the maturity of the note, and the amount was credited thereon. They did not produce the note at the trial, but claimed, and offered evidence to show, that the company had mailed the same to the address of plaintiffs, in Carthage. Plaintiffs testified that they never received the note, though they received mail regularly through the postoffice. The defendant's clerk, who testified to so mailing the note, stated that he saw no indorsement of any payment on the note when he mailed it.

Calhoon and Harrison contradicted, in the main, the testimony of plaintiffs as to the conversation respecting the payment of the note, and claimed that they advised them of the importance of making payment, in order to preserve their policy. The policy contained the stipulation, or condition, to the effect that if the premium note was not paid at maturity, the policy would not be binding.

Defendant's evidence, also, showed that they had and exercised the right of waiving such forfeitures, but by indorsement on the policy when made. The agent, also, testified that he extended the time of such payments, but by indorsement on the policy. The policy, also, contained the usual provision respecting waivers being in writing, indorsed on the policy, etc. At the close of plaintiffs' evidence, the defendant offered an instruction, in the nature of a demurrer to the evidence, which the court refused. On behalf of plaintiffs, the court gave the following instruction:

"1. If the jury believe, from the evidence, that, at the time said policy was issued, and subsequent thereto, W. W. Calhoon was agent of defendant insurance com-

pany, having general authority to solicit insurance, collect premiums, issue policies, collect premium notes and extend the same, and generally attend to the business of the company, and that Frank Harrison was his assistant in transacting such business, and that such agents had control of the collection of the note given by plaintiffs, and that, subsequent to the time said policy was issued and said note given, said agents, or either of them, gave plaintiffs to understand, and induced them to believe, that defendant company would not require them to pay said note when due, but that they could pay, in work or installments, before or after same became due, and that the conditions of said policy as to forfeiture for non-payment would not be enforced, but that their policy would remain good, valid, and binding, whether they paid when due or not, then defendant is estopped from defeating recovery herein on account of such non-payment or forfeiture, and such acts and sayings of said agent or agents operate as a waiver of such conditions of said policy as to forfeit for non-payment."

On the part of the defendant, the court gave the following instructions:

"The court instructs the jury that any declarations made before, and when the insurance was effected, does not bind the parties, and such evidence is not to be considered by the jury. When the note, application, and policy of insurance was signed, the whole became a contract in writing, binding on the parties, and, in the absence of fraud, the only contract between the parties, and must be enforced according to its terms and conditions, unless the conditions have been waived by the defendant or its agents authorized thereto."

"The court instructs the jury that the burden of proof is on the plaintiffs, to prove, by a greater weight or preponderance of evidence, an extension of time of payment, after the note given for premium was made, and to prove the waiver, by the defendant, of the conditions of the policy by a preponderance of the evidence,

and, unless the plaintiffs have proved, by a preponderance of the evidence, that defendant has so extended the time of payment, and waived the conditions of the policy, the plaintiff cannot recover, and you should find for the defendant."

The appellant, also, asked the court to submit special issues for the finding of the jury, which, with the answers made thereto, are as follows:

"1. Was there any waiver, by the defendant, of any of the conditions of the policy? Answer. Yes."

"2. If so, by whom was it made, and how? Ans. By defendant agreeing to extend the time of payments of note, and agreeing to accept part payment of note after the same became due."

"3. When and where was such waiver made, if there was any? Ans. Some time in January, 1885, in Carthage, Mo."

After the cause was argued before the jury by counsel, the court withdrew the first instr... tion given the jury, and submitted, in lieu thereof, the following:

"If the jury believe, from the evidence, that, at the time said policy was issued, and subsequent thereto, W. W. Calhoon was state agent of the defendant insurance company, having general authority to solicit insurance, collect premium notes, *and was in the habit of extending time of payment of notes, with the knowledge or consent of defendant*, and generally attend to business of the company, and that Frank Harrison was his assistant in transacting such business, and that such agents had control of the collection of the note given by the plaintiffs, *and, with the knowledge of defendant, were in the habit of extending notes*, and that, subsequent to the time said policy was issued and said note given, said agents, or either of them, *was authorized thereto by defendant*, and gave plaintiffs to understand, and induced them to believe, the defendant company would not require them to pay said note when due, but that they could pay, in work or installments, before or

after same became due, and that the conditions of said policy as to forfeiture for non-payment would not be enforced, but that their policy would remain good, valid, and binding, whether they paid when due or not, then such acts and sayings of said agent or agents operate as a waiver of such conditions of said policy as to the forfeiture for non-payment, *provided, the jury further believe, from the evidence, that the defendant had authorized said agents, or either of them, to extend the time of payment of plaintiffs' note, and to waive the forfeiture of its policy, and the jury will be authorized to infer such authority from any habit or practice of defendant, in allowing said agents extending other notes and waiving forfeitures thereon, if the evidence shows such a practice by said agents with knowledge of defendants.*"

The jury returned a verdict for the plaintiffs. To reverse the judgment entered thereon, defendant prosecutes this appeal.

E. C. DEVORE and D. A. HARRISON, for the appellants.

I.   Under the law, and upon the evidence set out in the record, defendant's first instruction, requesting the court to instruct the jury to find for defendant, should have been given. *Alexander v. Harrison*, 38 Mo. 258; *Hunt v. Railroad*, 89 Mo. 607.

II.   The court erred in giving to the jury plaintiffs' instruction number one, as modified and changed by the court, as there was no evidence whatever that defendant's agents, Calhoon and Harrison, or either of them, were in the habit of extending time of payments of notes with knowledge or consent of defendant, or that they ever did so in a single instance. *Brown v. Ins. Co.*, 86 Mo. 51 ; *Fike v. Clark*, 55 Mo. 105.   It is erroneous to instruct the jury to find for a party upon the supposition that they find a certain fact is true, where there is no evidence of the existence of such supposed

facts. *Chouteau v. Searcy*, 8 Mo. 733. Instructions based upon a state of facts not in evidence are erroneous and should not be given. *Rose v. Spies*, 44 Mo. 20; *Turner v. Baker*, 42 Mo. 13.

III. The proviso in instruction number one is unauthorized by the evidence, and the direction to the jury that they were authorized to infer a fact from a state of facts not proved, could have had no other effect than to mislead the jury, to the prejudice of defendant. *Bank of North America v. York*, 89 Mo. 369.

IV. The court erred in refusing to give instructions numbered six and seven, asked by defendant, as said instructions presented material issues presented by the pleadings and evidence, and not covered by any instructions given.

V. The court erred in refusing, at the request of defendant, to submit and direct the jury to answer the following particular questions of fact: "Q. 4. If there was a waiver, or extension, of time of payment of plaintiffs' note, was it made verbally or in writing?" "Q. 5. If verbally, what was said, who said it, and when and where?" These were questions of fact involved in the issues, material, pertinent, and necessary to be determined by the jury; the court had no discretion to refuse. *Bent v. Philbrick*, 16 Kas. 190; *Railroad v. Rice*, 10 Kas. 426; *Noble v. Enos*, 19 Ind. 72; *Bird v. Lanius*, 7 Ind. 621. The statute is imperative. Laws of Missouri, 1885, p. 213.

VI. The special findings of the jury are not sustained by the evidence, and are against the weight of the evidence. In fact, the record shows there was no evidence whatever to warrant the special findings, or either one of them, as found by the jury. The general verdict of the jury is contrary to the law and the evidence, and not sustained by any evidence. We challenge a search of the record, and it will be seen that the evidence in this case does not show a waiver. It is not a

question on the weight of evidence, but an entire failure of proof. *Groll v. Tower*, 85 Mo. 249.

VII. An agent cannot waive payment of note against express conditions of the policy. *McIntyre v. Ins. Co.*, 17 N. 781; 52 Mich. 188; *Supple v. Ins. Co.*, 58 Iowa, 29. The evidence shows that defendant notified plaintiffs, in writing, on the fifteenth of November, 1884, the receipt of which is admitted by plaintiffs, that payment must be made of amount of premium note at or before maturity, as they could not recover, in case of loss, after the note became due and remained unpaid. The failure of plaintiffs, after notice, to pay the premium, or arrange for extension, forfeited any rights under the policy. They were fully apprised of the consequence of a failure to pay their note. There is no equity in the case, or law or evidence to uphold the verdict and judgment.

VIII. Where an instruction submits an issue not warranted by evidence, the cause will be reversed. *Cottrell v. Spiers*, 23 Mo. App. 35.

HARDING & BULLER, for the respondents.

I. Forfeitures are not favored by the courts, but are held to be odious. May on Insurance [2 Ed.] sect. 361; *Ins. Co. v. Eshelman*, 30 Ohio St. 656; *Iron Co. v. Ins. Co.*, 1 N. W. Rep. 9.

II. Agents of insurance companies have power to waive and estop, both at time they take application, and afterwards, and knowledge of agent is knowledge of principal. May on Insurance [2 Ed.] sects. 143-4; *Combs v. Ins. Co.*, 43 Mo. 148; *Ins. Co. v. Gallatin*, 3 N. W. Rep. 773; *Schmidt v. Ins. Co.*, 2 Mo. App. 339; *Shaffer v. Ins. Co.*, 10 N. W. Rep. 381; *Kitchen v. Ins. Co.*, 23 N. W. Rep. 616; *Bennet v. Ins. Co.*, 31 N. W. Rep. 948; *Alexander v. Ins. Co.*, 30 N. W. Rep. 729; *Pelkington v. Ins. Co.*, 55 Mo. 172; *Ins. Co. v. Block*, S. C. Pa. 1 Atl. Rep. 523; *Ins. Co. v. Wilkinson*, 13 Wall. 222, 236; *Franklin v. Ins. Co.*, 42 Mo. 456.

III. When contract of insurance requires prompt payment of premium, or forfeiture, insurers may waive this condition by custom of receiving premiums after due, and by agents giving insured to understand that forfeiture will not be enforced. *Thompson v. Ins. Co.*, 52 Mo. 469 ; *Ins. Co. v. Norton*, 6 Otto, 234–245 ; *Carson v. Ins. Co.*, 17 N. W. Rep. 650; *Henly v. Ins. Co.*, 4 Mo. App. 253 ; 69 Mo. 380 ; *Sims v. Ins. Co.*, 47 Mo. 54 ; *Braydo v. Ins. Co.*, 42 Me. 259 ; *Bodine v. Ins. Co.*, 51 N. Y. 117.

IV. In an action against an insurance company, knowledge of facts by agent is knowledge of the company, and a verdict will not be disturbed because the evidence may be meager, or not sufficient to satisfy the mind of the court. *Siltz v. Ins. Co.*, 29 N. W. Rep. 605.

V. The evidence may be very slight, but the appellate court will not weigh it, and grant a new trial for that reason. *Read v. Ins. Co.*, 58 Mo. 421.

VI. The fact that plaintiffs were ignorant and unlettered persons, and depended on appellant's agents entirely for their knowledge respecting the conditions of the contract, will be considered by the courts. *Union Mutual Life Insuronce Co. v. Wilkinson*, 13 Wall. 222, 236.

VII. It is not proper, in a special verdict, to set out the evidence, but only the conclusion of the jury, from the evidence of the facts. *Bank v. Peck*, 8 K. 660.

,DEVORE & HARRISON, in reply.

I. Where the preponderance of evidence is so strong as to raise a presumption of partiality, prejudice, or corruption, on the part of the jury, the appellate court will reverse. *Spohn v. Railroad*, 87 Mo. 74; *Rosecrans v. Railroad*, 83 Mo. 678.

II. Where there is no evidence to support a verdict, judgment will be reversed. *Hacker v. Brown*, 81

Mo. 68; *Kendrick v. Railroad*, 81 Mo. 521. Where there is failure of proof of a material averment in the petition, there can be no recovery. *Groll v. Tower*, 85 Mo. 249.

Philips, P. J.—The demurrer to plaintiffs' evidence was properly overruled. A demurrer admits the truth of the facts testified to by the witnesses, and every reasonable inference that may be drawn therefrom. *Noeninger v. Vogt*, 88 Mo. 587. The real contention in this case was, as to whether or not the defendant had, by its conduct, acts, or declarations, waived a strict compliance with the provision of the policy respecting the payment of the premium note up to the time of the loss.

The agent at Carthage, who effected this contract of insurance, was the state agent of defendant, clothed with power to make such contracts, to issue policies, and contract in respect of the matter of premiums. Such agents are termed general agents, in contradistinction to special agents. Parties dealing with such general agents have the right to act upon the apparent authority of such agents, and are not bound or affected by any limitations or instructions placed upon or given to such agents by their principals, not known to the third party at the time of so dealing with the agent. In such case the acts, conduct, and declarations of such agent, within the scope of his agency, are just as obligatory upon the company "as if they proceeded from the principal." *Union Insurance Co. v. Wilkinson*, 13 Wall. 222; *Franklin v. Insurance Co.*, 42 Mo. 456; *Brownfield v. Insurance Co.*, 26 Mo. App. 390.

Such agents may waive the prompt payment of the premium and extend the time of payment; and by their acts, conduct, and declarations as effectually estop, or bind, the company as if done by its managing board. *Pelkington v. Insurance Co.*, 55 Mo. 172; *Horwitz v. Insurance Co.*, 40 Mo. 557; *Union Insurance Co. v. Wilkinson, supra; Hanley v. Life Association of*

*America,* 69 Mo. 380; *Schmidt v. Charter Oak Life
Insurance Co.,* 2 Mo. App. 339.

When such agents, either by their general course of
dealing, or by their conduct and assurances in the par-
ticular case, induce the assured to believe, and act upon
it, that he may pay the premium at a later date than
specified in the note and policy, he may act accordingly,
and no forfeiture will be permitted in contravention of
such extension. It was, therefore, simply a question of
fact, to be ascertained from all the surrounding circum-
stances, acts, and declarations detailed by the witnesses,
whether the agent did so waive the letter of the policy
respecting the time of payment of the premium. We
are satisfied there was ample evidence introduced by the
plaintiffs to entitle them to go to the jury. There are
some strong corroborative facts and circumstances, ad-
mitted by the defendant's evidence, to confirm the
plaintiffs' version. Waiving any discussion of the pe-
culiar phraseology of the closing words of the notice
sent plaintiffs, by the agent, on November 15, "you
cannot recover in case of loss, after note comes due,
*until same is paid,"* (which was calculated to convey
the impression, to one unfamiliar with such matters,
that the insured might, nevertheless, recover on the
policy, whenever he did pay the premium), it is quite
evident the agent did not, at the maturity of the note,
either declare any forfeiture for non-payment, nor take
any steps to enforce payment, although the agent and the
clerk of the company testified that it was their custom
to take steps to enforce the payment of over-due notes.
The plaintiffs' evidence was, that the work done after
the first of December, when the note was past due, was
to be credited on the note. The agent admits he did
so credit it, but that it was prior to the maturity of the
note. But he did not produce the note, which would
have spoken plainly on this point. Defendant claims
that it sent the note by mail to the plaintiffs, but it
does not appear to have ever been received by the plain-

tiffs. It was a little remarkable that the company should thus mail this note to the party, when they had an agent in the town where the plaintiffs resided, and the very agent who had transacted this whole business with the plaintiffs. Why did not the company return the note to its agent to be delivered to the plaintiffs, thereby securing certainty in its delivery, and preserving tangible and certain evidence of the fact? Again, Harrison, the assistant, testified that when he entered the credit on the note, for this work, he also charged himself on the books of the agent with the amount. Why was not this book produced?

But as further and more irrefragable proof that the agent regarded this contract as binding up to January following, is the fact, admitted by Harrison himself, that the five dollars for wood-sawing, then done by the plaintiff, Andrew, was to be credited on the note. The parties certainly, up to that hour, considered the time of payment extended. To parry the force of this important evidence, Harrison stated that he then advised the plaintiff that he must pay his note, or the policy would not avail him. There was a direct conflict between his testimony and the plaintiff's in this regard. It was for the jury to say which they would believe. There is no law to prevent the jury from crediting Andrew Jackson, in preference to Wm. Henry Harrison, or any other man.

The additional strong fact remains, too, that the agent continued, after this, to hold on to the note of plaintiffs, as the agent of the company, and on to the policy as agent for the plaintiffs. There was no surrender of either, nor any effort to collect the past-due note. This looks very much as if the agent held the plaintiffs in the attitude of "working and sawing out," if there was no loss by fire, but if a fire should occur, there was no policy. The law and good conscience will not allow the company to occupy such an equivocal and advanta-

geous position. *Baldwin v. Chouteau Insurance Co.*, 56 Mo. 157.

II.   Complaint is made of the action of the court in giving the first instruction, as amended by the court. The chief criticism made on it is, that there was no evidence before the jury respecting the "habit of extending the time of payment of notes."

There was some evidence to the effect that the company and this agent were in the habit of extending the time, but that it was done in writing, indorsed on the paper.   Be this as it may, the instruction, as originally framed, and argued before the jury by counsel, very properly presented the law, as we have already shown, as applied to the evidence before the jury.   No matter what the defendant's habit in this respect was, if, as the evidence amply tended to show, in this instance, the agent did waive the time of payment, and give the plaintiff to understand that he might work out the amount of the note, as testified to by him, this was sufficient.   By the answer made to the special interrogatories it is apparent that the jury did believe the statement of the plaintiff, and that as late as January, 1885, the time of payment was waived and extended.   That was all the law required the plaintiffs to prove on this issue.   And because the court went further in the amended instruction, and imposed upon the plaintiffs the burden of making additional proof of a fact not essential to their right of recovery, when the essential fact was supported by the proof, can constitute no reversible error in defendant's favor.   *Gaty v. Sack*, 19 Mo. App. 477, and cas. cit.

III.   It is assigned for error that the trial court refused to submit to the jury the following interrogatories :

"If there was a waiver or extension of time of payment of note, was it made verbally or in writing?"
"If the waiver was verbally made, what was said, who said it, and when and where?"

Why submit to the jury the question as to whether this waiver was in *writing*, when the plaintiffs made no such claim or pretence? This statute is not thus to be made use of. The issues submitted under it must pertain to the pleadings and the proof, and the matters in controversy. The last interrogatory was properly refused. It is not contemplated by the statute authorizing these special verdicts that the jury should be required to report the evidence by which they reach their conclusion. It is a special verdict, and not a report of the evidence by which they reach the verdict. *Nat. Bank v. Peck*, 8 Kas. 660; *Turner v. Railroad*, 23 Mo. App. 12. As said in *Flannery v. Railroad* (23 Mo. App. 127): "The question submitted should be strictly limited to the material issues made in the pleadings, and the facts essential to support the verdict. They should be few in number, etc., so as to avoid confusing the jury and leading them into unprofitable wrangles over non-essentials. And especially should the questions to be answered be intelligible to the apprehension of the average juror, and be in such form as to admit of a categorical answer under the evidence."

IV. The court refused two instructions asked by the defendant. All that was valuable and proper in them had already been accorded in other instructions; while the vice in one of them is so apparent as not to justify special review.

The verdict of the circuit court is affirmed. All concur.