YOUNG v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Railroads**: KILLING STOCK IN CITY LIMITS. Proof of actual negligence on the part of the company is not necessary in order to authorize recovery for live stock killed on a railroad track within the corporate limits of a city, if the place be one where the company might have fenced but did not.

2. ———: RATE OF SPEED. As matter of law, no rate of speed at which a train may be run constitutes negligence *per se.* *Powell v. Railroad Co.*, 76 Mo. 80.

3. ———: NEGLIGENCE. If the engineer in charge of a train, after discovering live stock on or near the track in danger, fails to use proper effort to avoid injuring them, the company will be liable for any injury done.

4. ———: ———. If an engineer in charge of a train on an unfenced road sees live stock grazing quietly near the track, he is not bound to stop the train or take other precaution against collision; and if they take fright and run upon the track, it is sufficient if he does all he can to avoid collision after he becomes apprised of their danger.

*Appeal from Marion Circuit Court.*—Hon. John T. Redd, Judge.

Reversed.

*Geo. W. Easley* for appellant.

*Thos. L. Anderson* for respondent.

Philips, C.—This is an action for damages for killing the respondent's horse in the city of Palmyra, Missouri, through the alleged negligence of defendant's servants and employes in running and managing one of its freight trains.

The evidence on plaintiff's behalf tended to prove that the town of Palmyra is an incorporated city; that plaintiff's horse was grazing beside the track of the railroad, about eighteen or twenty feet distant; that the engineer could have easily seen the horse when approaching with his train from three to five hundred feet off; that just beyond where the horse was grazing—some ninety feet—there was a public road crossing over the railroad track. On approaching this crossing the engineer gave the usual road crossing signal. On approaching, the horse ran down the ditch alongside the track, which ditch was three or five feet deep. The horse ran toward the road crossing which was his point of egress from the ditch. There was no apparent effort on the part of the engineer to check the speed of the train, which was running from ten to fourteen miles an hour, until the horse reached the crossing and attempted to cross the track where he was killed.

Defendant's evidence, through its engineer, was to the effect that the engineer had frequently seen this horse grazing at or about this point, and that he never knew him before to run along aside the track at the approach of the train and attempt to cross the track; that he first saw the horse on the occasion of the injury about 300 feet off, as he approached with a freight train; that the horse remained

22—79

grazing until he ran within thirty feet of him, when he ran as described; that he instantly gave the signal for applying the brakes, which was done; and that he reversed the engine and used every effort to avert the disaster; that owing to the character of grade at the point, he was under necessity to run at the rate of speed stated; that he made no effort to check the train when he first saw the horse because he apprehended no danger until his movement to cross the track.

On behalf of plaintiff the court declared the law to be: "If the jury believe from all the facts and circumstances proved in evidence, that the defendant, its servants and agents, could, by the use of reasonable care and diligence, have avoided injuring plaintiff's horse, it ought to find a verdict for plaintiff."

On its own motion the court gave the following instructions:

1. It was the duty of the employes of the defendant having the management of the locomotive and train to use a reasonable degree of care and skill in the management of said locomotive and train with the purpose of preventing injury to plaintiff's horse, and if from all the facts and circumstances proved, the jury find that the defendant's employes failed to use a reasonable degree of care and skill in the management of said locomotive and train, such failure was negligence, and if the jury further find that the injury to plaintiff's horse was caused by such negligence on the part of defendant's employes in the management of the locomotive and train, the verdict should be for plaintiff, assessing the damages at a sum equal to the actual value of the horse.

2. Unless the jury find from the facts and circumstances proved, that the employes of the defendant having the management of the locomotive and train did fail to use a reasonable degree of care and skill in the management of said locomotive and train, for the purpose of avoid-

ing injury to plaintiff's horse, the verdict should be for defendant.

The defendant asked a great many instructions, among which are the following, which the court refused :

5. If the jury believe from the evidence that the horse was quietly grazing beside the track and fifteen or twenty feet from it when the engineer first saw it, yet the engineer was not bound to stop his train until the animal was in danger of being struck, and if the jury find from the evidence that the engineer did all he could to stop his train and avoid the injury after knowing of the danger of the animal, they will render their verdict for defendant.

6. If the jury believe from the evidence that when the engineer first saw the horse it was quietly grazing beside the track, and some fifteen or twenty feet from it, then this was not sufficient to require the engineer to stop his train or take any precaution to avoid an unexpected danger, and if the jury find that the engineer did all he could to stop his train and avoid striking the animal after knowing of its danger, they should find for defendant.

The jury returned a verdict in favor of plaintiff for $100. Judgment entered accordingly ; from which the defendant has appealed to this court.

The question to be decided arises on the instructions. The plaintiff seemed to think, and the trial proceeded on 1. RAILROADS: kill- the assumption, that if the injury occurred
ing stock in city
limits. within the limits of an incorporated town no recovery could be had without proof, first made by the plaintiff, of actual negligence on the part of defendant. This was evidently on the hypothesis that a railroad company is not required to fence inside of the corporation. As to that the company may or may not fence. The consequence of not fencing at certain points on its line is a fixed liability resulting therefrom for injuries to stock. There are places within incorporated towns where the railroad may fence, as where there are no streets or alleys, and the public travel and convenience would not be interrupted

by such fence.   This matter has been reviewed and the law so settled in the case of *Wymore v. Hann. & St. Jo. R. R. Co., ante* p. 247.

It may be inferred, perhaps, from the statement made by plaintiff in this case, that the injury occurred at a street crossing, as it is called " a public crossing." If it was a street and a point within the corporate limits where the company might not fence on account of obstructing a thoroughfare, the absence of negligence on the part of the servants of defendant in running and managing the train would relieve the defendant from liability for the injury.

As to the rate of speed the train was running, it may be as well to observe that, as a matter of law, no rate of speed is prescribed at which a train may run, so that negligence *per se* may be predicated of it.   *Maher v. Railroad Co.*, 64 Mo. 267.   Negligence is a relative term, and each case must, in large measure, depend on its own peculiar facts.   What would be a negligent rate of speed under certain circumstances might be wholly blameless under others.   So what would be in common parlance gross negligence in one state of circumstances might be due caution in another.

2. ——: rate of speed.

If, as a matter of fact, the engineer in charge of the engine knew the horse was at the point grazing and saw him in time to check his train before reaching him, that fact of course was not sufficient to demand of him a slower speed.   He had no reason to anticipate that the horse would take fright and attempt to cross the track. If on the other hand he saw the animal start down the ditch toward the road crossing, being cognizant, as he was, of the road at that point, and knowing the liability to take, under circumstances of danger, the very path to it, it became and was his plain duty to have immediately put forth every effort at his command, without peril to his train, to check it and avert the injury.   And if, after discovering the horse in motion going toward the crossing, he could

3. ——: negligence.

have reasonably and safely so far stopped the train as to have avoided the collision, and neglected to do so, the defendant was clearly liable.

In this view of the law the instruction given on plaintiff's request is defective because it did not go far enough. It failed to tell the jury that defendant was liable if the engineer, after discovering the danger, failed to use proper diligence and effort to avoid the injury. *Wallace v. Railway Co.*, 74 Mo. 594. This would not, however, be sufficient ground for reversal if there had been other instructions given covering this aspect of the law. But in neither of the instructions given by the court on its own motion, was this matter put before the jury, at least not with such perspicuity as to lead their minds to the real matter constituting the negligence under the circumstances. The instructions were too abstract.

The defendant asked an unnecessary number of instructions, many of them presenting false issues, and some differing in no material particular from the principles laid down in those given by the court.

The fifth and sixth instructions asked by defendant would have more nearly directed the minds of the jury to the real issue than any presented. The only just criticism to which they are subject is the employment of the word "knowing." It was liable to misapprehension or abuse in argument. The better expression would be "after being reasonably apprised of the danger to the horse."

There is no reason why the trial judge could not in two instructions clearly embody the whole law applicable to the facts of this case, and reject all the rest offered. Instructions, while avoiding commentary on the evidence, ought not to be mere abstractions; but should be so applied to the facts of the particular case on trial as to aid the jury in applying the facts to the law. *Zimmerman v. Railroad Co.*, 71 Mo. 490, 491.

In order that this case may be properly placed before the jury, the judgment of the circuit court is reversed and the cause remanded. All concur. .