ASENATH BIANCHETTI, RESPONDENT, v. LORENZO E. LUCE ET AL., APPELLANTS.*

Kansas City Court of Appeals. June 27, 1927.

284

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 730, p. 808, n. 91; 4CJ, section 1648, p. 60, n. 20; Juries, 35CJ, section 439, p. 394, n. 34; Landlord and Tenant, 36CJ, section 961, p. 245, n. 14; section 974, p. 252, n. 31; section 976, p. 253, n. 51; Municipal Corporations, 43CJ, section 1789, p. 1005, n. 57; section 1853, p. 1081, n. 64; section 1855, p. 1089, n. 17, 27; section 1992, p. 1222, n. 40; section 1999, p. 1231, n. 51; section 2045, p. 1283, n. 98; section 2056, p. 1302, n. 13; p. 1304, n. 25; section 2057, p. 1306, n. 36; Pleading, 31Cyc, p. 82, n. 11; Trial, 38Cyc, p. 1625, n. 65.

*Kelly, Buchholz & O'Donnell* for respondent.

*Cowgill & Popham* for appellant Luce.

*John T. Barker, Milton J. Oldham* and *Arthur R. Wolfe* for appellant Kansas City.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $4000 and defendants have appealed.

The facts show that plaintiff, a woman twenty-three years of age, was injured on November 15, 1924, while walking on the west side of Main street in Kansas City, between 10th and 11th streets. She was on a public sidewalk in front of 1026 Main street, the place of business of defendants, the Luces, a co-partnership. These defendants are hereinafter called the personal defendants. Plaintiff in infancy suffered an amputation of her right leg and was required to use a crutch with which she could walk as well as any person under such a handicap. She was injured by inserting her crutch in a hole in the sidewalk. This resulted in the crutch going in a downward direction into the hole for several inches and the stump of her leg to come in contact with the sidewalk, causing her serious injuries.

The facts further show that the building was occupied by the personal defendants as sub-tenants; that the basement of this building extended out under the paved sidewalk in question and that these defendants in the transaction of their business occupied and used that part of the basement under the sidewalk as well as the basement under the building; that the space under the sidewalk was used by

them for the storage of its records and for the keeping of gas and water meters therein. There was a manhole about two feet in diameter in the sidewalk above the part of the basement extending under the sidewalk. This manhole was covered with a metal top in which were many circular holes filled with glass from one and seven-eighths to two and one-fourth inches in diameter. The glass was for the purpose of furnishing light in the basement under the sidewalk. At the time plaintiff fell, there were two or three of these glasses missing. The pieces of glass rested upon a one-fourth inch circular shoulder below the surface of the covering, which caused the openings at the shoulder to be somewhat smaller in diameter and, when the glass was removed, holes to be left through the manhole covering from one and three-eighths to one and three-fourths inches in diameter. However, there was evidence to the effect that the holes left through the covering after the removal of the glass were large enough for a woman's shoe heel to become caught therein. Plaintiff was injured while walking over the sidewalk in question when she placed her crutch in one of these holes in the manhole covering where a glass had formerly been. The evidence shows that these pieces of glass had been absent from the manhole for at least two months before the injury. The place where plaintiff fell was a much traveled part of the city and at the time in question many people were passing to and from a picture show located next door to 1026 Main street.

Plaintiff insists that the judgment should be affirmed on the record proper because that part of the record does not identify the bill of exceptions brought here by defendants as the bill filed in the trial court. The record proper recites—

". . . And afterwards on the 30th day of the November term, 1926, same being Thursday, December 30, 1926, same being before the last day of November, 1926, term of this court, defendants presented to the court their bill of exceptions, and the court having examined the same and found it to be correct, the same was by court signed, sealed and allowed, and it was ordered by the court that said bill of exceptions be, and the same was filed and made a part of the record herein in this case.

"And upon the 30th day of November term, 1926, same being Thursday, December 30, 1926, said bill of exceptions was duly filed with the clerk of said court who endorsed his filing mark thereon, entered on the records of said court by order of the court and the same was duly filed on said day."

Following the above recitals is a stipulation to the effect that the appeals taken by defendants be consolidated. Following this stipulation appears the bill of exceptions under the title "Bill of Exceptions." The case is styled in the bill of exceptions the same as in the abstract of the record proper. Respondent relies upon the case of

Watson v. Kerr, 287 S. W. 337, 339. The contention made in that case was that the abstract did not show the filing of any bill of exceptions but did show affirmatively that the bill of exceptions incorporated in the abstract was in fact the bill of exceptions that was filed in a companion case theretofore decided by the Supreme Court. In passing upon this contention the court at l. c. 339, said:

"To sum up, the situation is this: The bill of exceptions incorporated in the abstract of the record purports on its face to be the bill of exceptions in a different case. . . . We know of no way by which a bill of exceptions filed and approved in one case can be treated as a bill of exceptions in a different case. . . . No proper bill of exceptions is shown to have been brought before us, hence there is nothing for review, except the record proper."

We think that the holding in the Watson case is not applicable to the facts in the case at bar. The record proper in the present case sufficiently identifies the bill of exceptions as the bill filed in the trial court. [State ex rel. v. Trimble, 272 S. W. 72.]

It is insisted by the defendant, Kansas City, that the petition does not state facts sufficient to constitute a cause of action because it does not allege a compliance with the statute providing for service of a notice upon the mayor within ninety days after the injury for which plaintiff claims damages, stating the place and time when such injury was received, the character and circumstances of the injury, and that plaintiff would claim damages therefor from the city. The statute does not create the cause of action but the action existed independently of the statute. The notice not being an element of the plaintiff's cause of action, it was not necessary to plead it in the petition. [Morrill v. Kansas City, 179 S. W. 759, 762; Beane v. City of St. Joseph, 211 Mo. App. 200; Brown v. City of Kirksville, No. 15909, not yet officially reported.]

However, it is insisted by the defendant city that the court erred in admitting in evidence the notice to the city purporting to contain the signature of the mayor acknowledging service of the same on February 12, 1925, because there is no proof that the purported signature was in fact that of the mayor or that notice was in fact served within the ninety days' period. No objection was made to the introduction of the notice on the ground now raised by said defendant and it cannot be urged here in this court. [Johnson v. K. C. Rys. Co., 233 S. W. 942; Magill v. Bank, 250 S. W. 41; Jablonowski v. Modern Cap Mfg. Co., 279 S. W. 89; Hannibal & St. J. R. R. Co. v. Moore, 37 Mo. 338; Ring v. Canada Southern Line, 14 Mo. App. 579; Taussig v. Schields, 26 Mo. App. 318.]

Defendants claim that their demurrers to the evidence should have been sustained because the sidewalk in question was reasonably safe

for persons traveling thereon. We think this was a question for the jury. [Upham v. City of Boston, 72 N. E. 946.] While the holes in the manhole were not large they were of sufficient size for a woman's shoe heel to have been caught therein and it will be remembered that the place in question was on one of the principal public streets of a large city and there was a great amount of travel thereon, the evidence showing that thousands of people passed over the place in question every day.

· The personal defendants contend that the petition does not state any cause of action against them in that it fails to allege "that they were guilty of any commissive acts or commissive negligence." The petition alleges that these defendants maintained the manhole or "coal hole" with a covering therein in the sidewalk and that they, for a long time prior to plaintiff's injury, negligently suffered and permitted said covering to be and remain in a defective and dangerous condition leaving holes from two to three and one-half inches therein. The only attack made upon the petition at the trial was an objection to the introduction of any evidence thereunder. This manner of attack is not looked upon with favor, and if the petition states any cause of action whatever, it makes no difference how defectively it is stated, it must be held to be good. [Lopez v. Hines, 254 S. W. 37.] If there were holes in the covering of the manhole and defendants maintained the covering, necessarily they maintained the holes. In Morrill v. Kansas City, supra, this court held that the word "maintained" in pleading, means to "support what has already been brought into existence."

However, the personal defendants claim that there was no evidence showing that they were guilty of any commissive acts of negligence and therefore plaintiff is not entitled to recover as to them. There is no evidence as to who placed the manhole in the sidewalk but it may be inferred that it was placed there either by the owner of the property located at 1026 Main street or by some other person for a purpose in connection with the use of the premises. The testimony shows that it was in existence at the time the personal defendants sublet the premises. The manhole was used by these defendants to afford light for that part of the basement under the sidewalk. There is no evidence that it was used by them for any other purpose. The evidence shows that shortly after plaintiff was injured the personal defendants removed the manhole and replaced it with concrete so as to make the sidewalk of continuous material of this character. Defendants as tenants were required, under the common law, to keep the premises in repair but as showing the control that the personal defendants had of the place in question, plaintiff introduced the lease under which these defendants held the property. This lease under the heading of "REPAIRS AND MAINTENANCE" provides that the lessees shall

keep in good condition and repair "all exterior and interior parts of such improvements, *pavements*, alleys, *sidewalks*, entrances and approaches thereto" (italics ours). In view of the fact that these defendants were in possession and control of the areaway under the sidewalk and used that part of the premises for their purposes in connection with which the manhole was used in furnishing light, we think there is no question but that there was sufficient evidence to go to the jury on the question of their negligence in failing to keep the manhole cover in proper repair. [Kilroy v. St. Louis, 242 Mo. 79; Loundin v. Apple, 212 S. W. 891.] These defendants rely largely upon the case of Breen v. Johnson Bros. Drug Co., 248 S. W. 970, which is similar to the case at bar in many of its evidentiary facts. However, that case went off on the question of pleading, the court holding that plaintiff did not plead sufficient facts to hold defendant as a tenant. See, 1. c. 972, where the court said—

"The petition in this case alleges that defendant, as tenant and lessee, occupied the building at the southwest corner of St. Charles and Seventh streets in St. Louis, Mo., and that it was guilty of negligence in permitting a small hole to remain in the sidewalk in front of said property, by reason of which plaintiff's cane, which it was necessary for her to use in walking, went into said hole where glass had been broken out, caused her to fall and sustain the injuries complained of in petition. It is not claimed that defendant, or any of its employees, produced said hole, or in any manner aided in producing the same. On the contrary, plaintiff, in her petition, seeks to recover damages from respondent on the theory that it impliedly was under obligation to keep said walk in repair."

The court then treated the case as though it were one merely where a defective sidewalk in front of the abutting property occupied by defendants as tenants was involved, for, in support of the decision the court relied upon a case holding that even where the city has passed an ordinance requiring the property owner to keep a sidewalk in repair, or remove ice and snow therefrom, in front of premises of an abutting owner, such owner is not responsible for injuries caused by failure to comply with the ordinance, for the reason that there is no such duty at common law and such a duty cannot be imposed upon the abutting property owner by ordinance. The petition in the case at bar relies upon something more than the mere liability of an abutting property owner or tenant to keep in repair the sidewalk in front of his premises. For, as before stated, it pleads affirmatively that these defendants maintained the manhole and covering therein as lessees of the building. It may be that ordinarily a property owner or tenant owes no duty to the public to repair or keep in safe condition a manhole in a sidewalk abutting his property, and this is all that is held in the case of Breen v. Johnson Bros. Drug Co., supra,

Wright v. Hines, 235 S. W. 831, and other cases cited by said defendant. But in the Wright case the court stated, l. c. 833—

"This doctrine is entirely distinguishable from the cases cited by appellant, to the effect that if a private individual throws water on a sidewalk and thereby causes ice to accumulate, or construct a coal chute in the walk, or places a stairway thereon, or puts an obstruction of any kind on the walk for his own purposes, he may be personally liable for an injury resulting therefrom. Those persons are held liable because they are placing something on or in the walk that does not belong there, or is placed there for his own use, and is not a part of the walk as originally constructed. The principle on which they are held responsible has no application to a private individual who may fail in his duty to the city to repair a sidewalk abutting his property." [See, also, Independence v. Mo. Pac. Ry. Co., 86 Mo. App. 585, 591; Sandretto v. Railroad, 218 Mo. App. 590, 596.]

Defendants insist that the court erred in giving plaintiff's instructions Nos. 1 and 2 and defendant, Kansas City, that it erred in refusing to give its instructions J and K. Plaintiff's instruction No. 1 reads as follows:

"The court instructs the jury that it was the duty of the defendant Kansas City to exercise ordinary care to maintain the sidewalk in question in a reasonably safe condition for persons traveling thereon while exercising ordinary care for their own safety, and if you further find and believe from the evidence that there were holes in said sidewalk of sufficient dimensions so as to make said sidewalk dangerous to persons using a crutch in traveling over the same, and that the defendant Kansas City by the use of ordinary care on its part should have anticipated that such persons would be traveling over said sidewalk and that there would be danger to such persons from the existence of said holes, and if you further find and believe from the evidence that said holes were in said sidewalk for a length of time reasonably sufficient to have enabled the defendant Kansas City by the exercise of ordinary care, to have known of and remedied and repaired the same, and that said defendant Kansas City negligently failed so to do, and that as a direct result of the said negligent failure of the defendant the holes in said sidewalk caused the said sidewalk to be in a condition which was not reasonably safe for the plaintiff to use while exercising such care for her own safety as would be ordinarily exercised by a reasonably prudent person under the same or similar circumstances, and that the said plaintiff on the 15th day of November, 1924, while walking north on said sidewalk was injured by reason of her crutch going through one of said holes, if it did, in the said sidewalk, and that at said time and place the plaintiff was exercising reasonable care for her own safety and that as a direct result of said defendant's negligence, if any, as aforesaid, the plaintiff's crutch went through one of said holes, and the plaintiff was

thereby caused to fall and be injured, if you find she was injured, then your verdict must be for the plaintiff and against the defendant Kansas City.''

Plaintiff's instruction No. 2 is similar to her other instruction except that it covers her case against the personal defendants. Instruction No. 2 submits the duty of said defendants in occupying property abutting on the sidewalk in question and maintaining an areaway and manhole covering in the sidewalk for use in connection with the occupation of the premises and submits that under such circumstances defendants were under the obligation to exercise ordinary care to maintain the covering in question in a reasonably safe condition for persons traveling thereon while exercising ordinary care for their own safety. The remainder of the instruction is similar to that part of plaintiff's instruction No. 1 relating to the care required of defendants toward persons using a crutch in traveling over a sidewalk, including plaintiff.

The city's refused instructions J and K sought to submit that the city's duty was to keep its streets reasonably safe for the *ordinary and usual mode* of travel and that it was not liable for failure to make special provisions required only for the safety of persons traveling with crutches. Under the holding of Bethel v. St. Joseph, 184 Mo. App. 388, Wilkerson v. City of Sedalia, 205 S. W. 877, and Hestand v. Hamlin, 218 Mo. App. 122, all decided by this court, the duty of the city in relation to keeping its sidewalks in repair goes no further than to require it to use ordinary care to keep its streets in reasonably safe condition for travelers passing over them in the *ordinary mode*, while in the exercise of ordinary care, and the city's instructions should have been given. However, these cases, and others upon which they are founded, have substantially been overruled by the Supreme Court in the cases of Hunt v. St. Louis, 278 Mo. 213, and Hanke v. St. Louis, 272 S. W. 933, the Hanke case having been founded upon the Hunt case. These two cases were called to our attention in plaintiff's motion for a rehearing and since that time defendants have substantially abandoned the contention that instructions J and K should have been given. However, it is claimed by the defendants that even under the Hunt and Hanke cases plaintiff's instructions Nos. 1 and 2 were erroneous in that they single out plaintiff's situation and invoke individual care for her. In the words of the personal defendants the claim is that in the Hanke case—''. . . the court thought and ruled that the sidewalk was for the whole public, regardless of manner and mode of travel, and condemned the element of singling out peculiar situations. That opinion (Hanke case) is a strong condemnation of these instructions which would single out plaintiff on crutches, and set up a special and isolated rule for her individual enjoyment.''

No doubt the Supreme Court in the Hunt and Hanke cases could have distinguished those cases from the Bethel and other cases decided by this court, in the way that defendants contend they did distinguish them, but as a matter of fact the Supreme Court did not do so but put its holding upon an entirely different ground. In the case of Hunt v. St. Louis, plaintiff was injured while riding in a wagon at nighttime when he ran against rock and sand piled in the street by the subcontractor, Heman, one of the defendants. This caused the wagon to turn over, throwing plaintiff out, resulting in the horse becoming frightened and plaintiff being dragged some distance and badly injured. There was a verdict against the subcontractor who caused the obstruction to be in the street but in favor of the contractor and the city; both plaintiff and the subcontractor appealed. There was a dispute in the evidence as to whether the horse at the time plaintiff was injured was beyond plaintiff's control and running away. The trial court gave an instruction which, among other things, told the jury that the city's liability was to keep the street in a "reasonably safe condition for travelers passing over them in the *ordinary mode*." The court in condemning this instruction did not put its disapproval upon the grounds suggested by the defendants in the case at bar, but stated, l. c. 227, 228—

"It is the duty of the city to keep its streets in reasonably safe condition for travelers passing over them in any and all modes: provided only (1) such modes are lawful, and (2) do not of themselves constitute contributory negligence in the traveler to a degree forbidding his recovery. . . .

"If the test of the use of the streets and sidewalks of cities by pedestrians and persons riding thereon is to be that of the use thereof in the 'ordinary mode' serious question would inevitably arise as to what constituted the ordinary mode. This question will comprehend the rate of travel as well as the means thereof."

The Supreme Court in the Hunt and Hanke cases not only overruled the Bethel and Wilkerson cases decided by this court (see 43 C. J., pp. 1004, 1005, note 57) but disagreed with many of its own decisions, among which are Sindlinger v. City of Kansas, 126 Mo. 315, Holloway v. Kansas City, 184 Mo. 19, 29, but none of these cases are even mentioned in the Hunt and Hanke cases. Under the ruling of the Supreme Court in the Hunt and Hanke cases we think that plaintiff's instructions, as far as defendants' present objection to them is concerned, are not materially erroneous. There is no controversy but that plaintiff was using a lawful mode of travel over the sidewalk at the time she was injured and unless she was confined to merely stating to the jury an abstract proposition of law (a manner of submitting a case that is frowned upon by the courts, Young v. Railroad, 79 Mo. 336, 341, Hewitt v. Price, 99 Mo. App. 66), to-wit, that it was the duty of defendants to see that the sidewalk was reason-

ably safe for travelers passing over them in any and all modes, we think that it was competent for her to point out the fact that she belonged to a particular class of persons who used the street, that is, those traveling upon crutches. We cannot imagine how plaintiff could submit the facts of her particular case to the jury and defendants' duty in reference to the sidewalk in question without directly or inferentially referring to the fact that she was one of a class of persons who traveled over the streets of the city upon a crutch and the duty of the defendants toward such persons. In the case of Young v. Railroad, supra, the Supreme Court stated, "Instructions . . . should be applied to the facts of the particular case on trial so as to aid the jury in applying the facts to the law." It is not a question of setting up an isolated rule for plaintiff's individual protection but rather applying a general rule of care that was owed to persons traveling with due care upon the sidewalk in any and all modes, including those moving upon crutches. If those moving upon crutches in the exercise of ordinary care were entitled to protection, we do not see any harm in so telling the jury.

However, it is contended that the jury were instructed that the sidewalk should be kept reasonably safe for *plaintiff* to use, thus saying to them that the city was under the duty to make a special provision for *her*. We do not so read the instruction. As we read it, it required the jury to find, first, that defendants failed to use ordinary care to keep reasonably safe the sidewalk for persons traveling over the same by the use of a crutch, and then, *in addition*, that before plaintiff could recover the jury must find that the sidewalk was not reasonably safe for her; in other words, the two propositions were submitted in the conjunctive.

We think, however, that the court erred in giving plaintiff's instruction No. 3, which reads as follows:

"The court instructs the jury that a pedestrian using the sidewalks is not required to constantly keep her eyes directed toward the sidewalk as she takes each and every step, but is only required to use such care as an ordinarily careful and prudent person would use under the same or similar circumstances and you are further instructed that if you find and believe from the evidence that plaintiff had no knowledge of the holes, if any, in the manhole cover at the place mentioned in the evidence and had no reasonable ground to anticipate that there were such holes, if any, in said manhole cover, then she had a right to assume that the sidewalk at the place mentioned in evidence was reasonably safe for her to walk on same with reasonable safety, and you are further instructed that if you find and believe from the evidence that plaintiff was at the time and place mentioned in the evidence using such care as would ordinarily be exercised by an ordinarily careful and prudent person, under the same or similar

circumstances, then plaintiff was not guilty of negligence in not look ing at the sidewalk and in not seeing the hole until her 'crutch went therein, if you believe it did.''

The evidence as to what care plaintiff used at the time in question was as follows: Her witness, McDonald, testified that she was injured about 5:00 P. M. and at the time it was broad daylight; that persons were traveling on both sides of the sidewalk, those northbound, as were the witness and plaintiff, were upon the east side of the walk and those southbound next to the property line; that plaintiff was traveling from seven to eleven feet in front of him, that no one was between the two and that there was no one in front of plaintiff closer than three feet. The witness further stated that he was walking with his wife, side by side, and had no difficulty; that plaintiff was looking straight ahead and walking at an ordinary gait, about the same rate of speed as the witness; that in his judgment there would not be any danger to anyone walking on the sidewalk at the place in question except to one walking with a cane or crutch. Mrs. McDonald testified that plaintiff and the witness were walking on the outside of the east side of the sidewalk and that southbound pedestrians were walking on the inside or west side of the walk; that plaintiff had some packages in her arms at the time she fell which ''flew on the sidewalk;'' that there were a number of people coming out of the picture show, that the street was crowded; that she was from six to ten feet behind plaintiff when the latter fell; that there were many people on the streets back and in front of her and plaintiff but the witness could see no one between plaintiff and herself and husband.

Plaintiff testified that at the time she fell she was in good health; that ''I didn't expect the hole to be there, I was walking right along;'' that she had no knowledge of the presence of the hole and assumed that the street was ''all right;'' that there was ''quite a crowd ahead of me;'' that the picture show was about four yards from where she fell; that she watched the sidewalk ''where I could . . . I didn't feel that I could keep my eyes right down on the sidewalk;'' that she was not looking at the sidewalk where she placed her crutch at the time she fell. She further testified—

''Q. You were not noticing, were you? A. Yes, of course, I could not keep my eyes glued down to the sidewalk.

''Q. I am not asking you if they were glued, I asked you if you were looking. A. Yes, I tried to.

She testified that there was a crown of people around her and the closest person to her was ''right next to me, . . . Well, there was some in front and some in the side and some in the back;'' that the person in front was about one foot away and that she was walking that close to the people there; that ''I was watching—trying to watch my step and still trying to weave my way through the crowd.''

294

"Q. Were you watching where you placed your crutch? A. Where I could I tried to, but there was a crowd I kind of had to weave my way through the crowd.

"Q. Did you ever see where you placed your crutch at that time? A. No, sir.

"Q. You put it down without looking where you were putting it? A. Yes, sir."

As the evidence is undisputed that plaintiff did not know of the hole in the sidewalk, plaintiff's instruction No. 3 is tantamount to telling the jury that she was under no obligation to look at the sidewalk and see the hole in which she put her crutch, providing she exercised ordinary care in other particulars. The instruction is ambiguous; it is susceptible to a construction that the plaintiff was under no duty to look in any manner at the sidewalk ahead of her. It is true that the courts have held that pedestrians who have no knowledge of any defect in the street and there is nothing in the surroundings to indicate any danger, are not required to constantly keep their eyes on the sidewalk in front of them; in other words, as stated in some cases, they are not required to be "sidewalk inspectors" (see Huffman v. City of Hannibal, 287 S. W. 848, 849), and there are cases where the appellate courts have approved an instruction telling the jury that a pedestrian has the right to assume that the sidewalk is reasonably safe where he has no knowledge of a defect; for instance, in the case of Bentley v. Hat Co., 144 Mo. App. 612, 615, the court approved the following instruction—

"If the jury find and believe from the evidence that the sidewalk mentioned in the evidence was a public thoroughfare and in common and general use by pedestrians, and that plaintiff did not know that covering had been removed from the manhole or opening in said sidewalk, then the plaintiff had the right to act upon the assumption that the said sidewalk was in a reasonably safe condition, plaintiff being required, however, in going or walking along or upon said sidewalk to exercise reasonable care for his own safety."

But it is well settled that when a court says that one does not have to keep his eyes glued upon the sidewalk in front of him, or to constitute himself a "sidewalk inspector," it is not meant that there is no duty whatever to look. [See Ryan v. Kansas City, 232 Mo. 471, 483, 487; O'Neil v. St. Louis, 292 Mo. 656, 665.] As was stated in Heberling v. Warrensburg, 204 Mo. 604, 617—

". . . every traveler is bound to use ordinary care for his own safety and that if Mrs. Coffey in that case was proceeding carelessly and *without paying any attention to where she was walking then she could not recover*, but it is not to be understood that it is the duty of the citizen to inspect the sidewalks or streets for defects of which he has no knowledge, but he may act on the presumption the street

is reasonably safe so long as he conducts himself as a reasonably prudent person would under like circumstances.''

The rule under such circumstances is well stated by the Supreme Court in Hebenheimer v. St. Louis, 269 Mo. 92, 101, quoting from an Iowa case—

''Respondent's duty was to exercise ordinary care for her own safety. She was not, however, 'bound to look for hidden dangers.' All that was required of her was that she walk with her eyes open, observing her 'general course and in the usual manner.' ''

All of the cases that we have cited on this question involved persons who had no physical defect such as the loss of a leg requiring the use of a crutch. However, we would not be justified in saying that one traveling upon a crutch would be required under all circumstances to keep a constant look ahead for possible places where a crutch might get caught, and we think in the case at bar, under the facts taken in their most favorable light to plaintiff, we cannot say as a matter of law that plaintiff was guilty of contributory negligence in not looking where she placed her crutch at the time in question. It will be remembered that the street was crowded and according to her testimony there were people on every side of her and she had reason to believe that the sidewalk in a congested part of a large city like Kansas City, and presenting a long expanse of perfectly smooth, paved surface, would not contain holes such as the evidence shows existed at the place in question.

However, in passing upon the question as to the propriety of giving plaintiff's instruction No. 3, which, aside from the first part thereof, which is a mere abstraction, is susceptible to the construction that it declares, all as a matter of law, that plaintiff was not guilty of negligence in not looking in any manner at the sidewalk and in not seeing the hole, we must take the evidence in its most favorable light to defendants. This evidence shows that while there were a great number of people on the sidewalk, the crowd was not as dense as plaintiff's evidence tends to show. There was some evidence tending to show that there was as much as eleven feet between McDonald and plaintiff with no pedestrian intervening, and that there was no person in front of her for a distance of three feet. There is no contention that anything unusual occurred distracting plaintiff's attention. Even if plaintiff was required to use no more care than that prescribed in the case of Hebenheimer v. St. Louis, supra, that is, to walk with her eyes open, observing her general course in the usual manner, we cannot say as a matter of law, taking the testimony in its most favorable light to defendants, that plaintiff, under all the circumstances, has shown that if she had exercised the degree of care prescribed, she would not have seen the hole. No court has gone to the extent of holding that even a person with good legs is as a matter of law *not*

guilty of contributory negligence in failing to look at the sidewalk and not see the defect therein.

Even assuming that the instruction is to be read as excusing plaintiff merely from looking *down* at the sidewalk in front of her to see that she did not place her crutch in a hole, we are still of the opinion that the court should not have declared as a matter of law that plaintiff with her impediment, with packages under her arm and under all the circumstances, was not guilty of contributory negligence as a matter of law in failing to so look. [43 C. J., pp. 1080, 1081.] We think that under the facts in this case plaintiff's instruction No. 3 was clearly erroneous and requires and reversal and remanding of the case in favor of both defendants.

The personal defendants contend that the court erred in permitting plaintiff's counsel to interrogate the jury on *voir dire* examination in reference to their connection with the Employers Indemnity Corporation. There was no error in this connection if the facts in the record establish that such inquiry was made in good faith. [Malone v. Small, 291 S. W. 163; Jablonowski v. Mfg. Co., supra; Simmer v. May Dept. Store, 282 S. W. 117; Snyder v. Wagner Elec. Mfg. Co., 284 Mo. 285, 311.] The facts in reference to this matter show that in response to a question from plaintiff's counsel defendants' counsel admitted, without the hearing of the jury, that the personal defendants had an insurance contract with the Employers Indemnity Corporation. This furnished a good reason for interrogating the jury in relation to their connection, if any, with such insurance company. [Plannett v. McFall, 284 S. W. 850.]

There was no error in the admission of evidence of the repairing or reconstruction of the manhole in question by the personal defendants. This evidence was competent as going to show the possession and control of the personal defendants over the sidewalk at the place in question and that the obligation was upon them to make the repairs. [Rusher v. City of Aurora, 71 Mo. App. 418, 424; Bailey v. Kansas City, 189 Mo. 503; Brennan v. City of St. Louis, 92 Mo. 484, 488.]

Other points are raised which probably will not recur on a retrial of the case and we need not go into them.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.