H. G. MUNDEN, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.*
—38 S. W. (2d) 540.

Kansas City Court of Appeals. March 2, 1931.

*Winger, Reeder, Barker, Gumbiner & Hazard* for respondent.

*David R. Derge* of council.

*George Kingsley* and *Marcy K. Brown, Jr.,* for appellant.

CAMPBELL, C.—The following parts of the opinion written by Judge BLAND, upon the original submission of the cause, are adopted by the court:

"This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3784. Defendant has appealed.

The facts show that on December 30, 1923, plaintiff was driving his automobile eastwardly over the Twenty-third Street Viaduct in Kansas City; that when he came to the end of the viaduct and was about to turn southward upon Brook street he ran into a hole causing him to lose control of his car. Thereafter the car ran over the west curb of the street thence through a board fence, which ran along the top of an embankment, and thence over the embankment and downward for a distance of thirty-three feet, resulting in his injuries.

The Twenty-third street viaduct is a steel and concrete structure connecting Kansas City, Kansas, with Kansas City, Missouri. The east end of the viaduct in Kansas City, Missouri, is known as Brook street. This street turns in a southerly direction, running down hill from its starting point at the east terminus of the viaduct. Brook street is forty-two feet in width and has double street car tracks in its center. These tracks run along the north side of the Twenty-third street viaduct and at the east end thereof turn toward the south into Brook street. It is eight feet from the west rail of the west street car track on Brook street to the west curb of the street. The street is paved with cobble stones both between the street car tracks and in the roadway on both sides of the tracks. The viaduct has a concrete fence or balustrade running along the south side thereof about three and one-half or four feet in height. At the connection of the viaduct with Brook street this railing turns for a few feet south where it joins a large concrete pier. Along the west side of Brook street south of and beginning with this pier is a wooden fence constructed of upright posts of railroad ties across which are nailed a series of three

one by six planks. The fence is about four and one-half feet high, is owned by the Kansas City Terminal Railway and stands immediately west of the west curb line of Brook street. The curb is seven or eight inches high. Immediately west of the fence is a perpendicular embankment and retaining wall at the bottom of which is railroad tracks thirty-three feet below the surface of Brook street. About ten to thirteen feet six inches south of the concrete pier along the side of Brook street there is an iron trolley pole.

About two weeks prior to the time of plaintiff's injury a truck had run into the wooden fence between the pier and the trolley pole breaking away the fence for a distance of from ten to thirteen feet six inches. The break in the fence started at the pier. Thereafter a one by six board was placed across this gap made by the truck, the south end of the board being attached to the trolley pole above the ground and the other end placed against the curb without being attached. Immediately at the east end of the viaduct where it joins Brook street was a depression or a hole in the cobble stone pavement. This hole was at the point where the cobble stone joined the concrete pavement of the viaduct. The hole was from two to three feet along east and west and a foot and a half wide from north to south. It began at a point a foot and a half distant from the west car track and its west end was three and one-half feet from the west curb. It was twenty-four feet from the hole to the gap in the fence. The hole was straight down and eight or nine inches deep at the point where the concrete of the viaduct ended.

On the day in question plaintiff quit his work as a brakeman in Armourdale in Kansas City, Kansas, about 2:30 p. m. and drove his automobile over the viaduct. There was a slight mist of rain which had been falling a short time. The temperature was thirty or thirty-five degrees above zero. It was not freezing at the time but it grew colder later. Plaintiff's car was equipped with a hand-operated windshield wiper which he was using. As plaintiff approached the east end of the viaduct an east-bound street car was standing at the east end of the viaduct taking on passengers. Plaintiff, when he started to turn south on to Brook street, saw that the street car had started up and was about fifty feet away from him. Plaintiff was driving at a rate of speed of eight to ten miles per hour. His brakes were in good condition but he did not have any chains on the wheels of his car. He could have stopped his car within ten or twelve feet under the circumstances.

Plaintiff had driven over this viaduct and Brook street for a good many years in going to and from his work. He knew that the hole in the street had existed for two or three months. It had

been repaired several times by filling it with gravel and oil but this filling would gradually wear out. In going over this hole plaintiff had always "straddler it" or had gone around it on the street car tracks. He had always succeeded in avoiding striking the hole. On the day in question he tried to straddle the hole but did not succeed in doing so. On reaching the east end of the viaduct plaintiff turned the wheels of his car south in order to go southward into Brook street. His left front wheel then went into the hole causing the steering wheel to break leaving the rim of the wheel in his hand and resulting in his losing control of his car. The car was equipped with what is called an irreversible steering gear, and the wheels having been turned to the right, the car continued to go in that direction. It ran over the curb, through the board which had been placed over the gap in the fence and fell to the railroad tracks below.

The evidence shows that there was not room enough for plaintiff to go between the curb and the hole and the reason he gave for not going around the hole to the east or over the street car tracks was that the cobble stones were rougher between the tracks and that the rails were slippery, consequently, he preferred to "take the chance on the hole than I would the rails."

It is insisted by defendant that the court erred in refusing to give its peremptory instruction for the reason that plaintiff was guilty of contributory negligence as a matter of law. In this connection defendant urges that the roadway and the street were slick and icy and plaintiff's car was no equipped with chains. While there was some testimony tending to show that the temperature was below freezing, the evidence, taken in its most favorable light to the plaintiff, shows to the contrary. We fail to see what difference it makes whether it was freezing or not. Plaintiff stated to the effect that to the best of his knowledge he did not skid. We would not be authorized to say as a matter of law that plaintiff was guilty of contributory negligence in not having chains even had the weather been freezing and he had skidded.

However, it is insisted that plaintiff know all about the condition of the street; that he should have gone around the hole and on the street car tracks or driven sufficiently slow to straddle it; that he had always escaped it before and should have done so this time; that it was broad daylight and there was nothing to obscure his vision.

We cannot convict plaintiff of contributory negligence as a matter of law even though he did know of the circumstances present, including the gap in the fence. He had been able to straddle the hole before and while there was no doubt some danger in attempting to do so on this occasion he stated that the reason he did not go around the hole and over the street car tracks was

because the pavement was rougher between the tracks and it had been raining and the tracks were slick. It will be remembered also that the street car had started up and had almost reached the point where plaintiff would have been required to go upon the tracks in order to go around the hole.

Defendant infers that plaintiff's automobile was in a bad condition of repair because the steering gear broke. In view of the fact that the falling of his car into a hole for a distance of nine inches well could have caused something to give away about the car the jury were not required to draw any such inference, much less, the inference that if the steering gear was out of repair plaintiff knew or should have known of it.

Defendant points out that plaintiff testified that he could have stopped his car within ten or twelve feet at the rate of speed he was going and that he had his foot on the brake at the time he went into the hole. It was twenty-four feet from the hole to the gap in the fence. It is argued that if plaintiff had been careful he would have stopped his car before it reached the precipice, especially in view of the fact that the car was first required to go over the curb which was seven or eight inches in height. However, we cannot convict plaintiff of contributory negligence as a matter of law because he did not act as one normally would have done had no accident befallen, that is to say, had not the steering gear broken. We cannot say as a matter of law that a speed of eight miles per hour was too great for plaintiff to have been proceeding at the time he ran into the hole, even though he knew all of the circumstances.

We have examined the cases cited by defendant and find them not in point. The argument that defendant has made in its brief in reference to the matter of plaintiff's contributory negligence is one that might well have been made to the jury but is hardly one to be addressed to an appellate court.

Defendant insists that the court erred in giving plaintiff's instruction No. One which reads as follows:

"The court instructs the jury that it is the duty of the defendant to exercise ordinary care in keeping its streets in a reasonably safe condition for the use of travelers thereon, and that it is the duty of the defendant to use all reasonable ordinary care in inspecting its streets to ascertain what, if any, defects there may be in said streets which would or might prove dangerous to persons using such streets in all ordinary modes of travel.

"Therefore, you are instructed that if you find and believe from the evidence that, on December 30, 1923, the plaintiff, while driving his automobile eastward across the viaduct located in the City of Kansas City, if you so find, mentioned in evidence, and upon reaching the end of said viaduct, while driving at a reasonable rate

of speed, if you so find, and while in the exercise of reasonable and ordinary care for his own safety, if you so find, a wheel or wheels of his automobile struck a depression or hole in the paving of the street, causing the steering wheel of his automobile to break and causing his automobile to pass over the curbing of said Brook street mentioned in evidence, through no want of care on his part, and to plunge to the railroad tracks below, mentioned in evidence, if you so find, thereby causing bodily injury to plaintiff, if you so find, and if you further find and believe from the evidence that the said street was at the time and place referred to in evidence, an established public street of the City of Kansas City.

"And if you further find and believe from the evidence that the said hole or depression, if any, in said street mentioned in evidence, had existed in said street, for a length of time sufficient for the officers of the defendant to have known by the exercise of ordinary care of its existence, if you so find, taking into consideration the amount of public travel at said point in said street mentioned in evidence, and had existed for a sufficient length of time after the time defendant knew or by the exercise of ordinary care should have known of its existence, if you so find, for the officers of the defendant by reasonable diligence to have repaired the same, or placed such barriers around the same prior to the time of said alleged accident, to prevent the plaintiff or other persons driving over said street, from striking the same.

"And if you further find and believe from the evidence that the hole or depression in said pavement which the wheel of plaintiff's automobile struck, if you find that the wheel of plaintiff's automobile did strike said hole or depression, was of such a nature as to make said street dangerous for travel to plaintiff or other persons passing over said street in any ordinary mode of travel, then your verdict may be for the plaintiff and against the defendant and;

"Provided you further find that the plaintiff caused to be served the notice to the Mayor mentioned in evidence, in the manner provided in the other instructions herein."

It is claimed that the instruction is erroneous because it required the defendant with "*all* reasonable ordinary care." It is claimed by the use of the word "all" that the jury would understand that a higher degree of care than reasonable or ordinary care was meant. We think there is not merit in this contention. If the jury had simply been instructed that it was defendant's duty to use reasonable or ordinary care, they would have necessarily understood that defendant was not required to use that care in part but was required to do everything that an ordinary and reasonable person would do under like or similar circumstances. If the use of the word "all" is subject to any criticism it is that it emphasizes the fact that defendant was required to use care but it does not amount

to an undue emphasis or a comment on the evidence. However, we see no necessity for plaintiff trying to improve on the phrase "reasonable" or "ordinary" care as used and approved by the courts. To try to emphasize the duty of a defendant in a negligence case is dangerous and might, if carried too far, make an instruction reversibly erroneous.

It is contended that by the use of the words "through no want of care on his part" the instruction assumes that there was no want of care on plaintiff's part. However, a mere reading of the instruction shows that there is no merit in this contention.

It is claimed that by the use of the words "the hole or depression was of such a nature as to make the street dangerous for travel to plaintiff or other persons passing over said street in any ordinary mode of travel," etc. the instruction is erroneous because there was no duty on the part of the defendant to maintain and keep its streets reasonably safe "for this plaintiff individually." The instruction was not erroneous for the reasons assigned. [Bianchetti v. Luce, 2 S. W. (2d) 129, 134; Scanlon v. Kansas City, 19 S. W. (2d) 522, 527.]

It is claimed that the instruction is erroneous because it purports to cover the entire case and directs a verdict for plaintiff without requiring the jury to pass upon defendant's plea of contributory negligence. The instruction requires the jury to find that plaintiff, when he approached the hole and drove into same, was in the exercise of reasonable and ordinary care for his own safety; that the steering gear was caused to break and his automobile to pass over the curbing "through no want of care on his part." Under all of the circumstances it would appear that plaintiff's care was fully submitted to the jury in the instruction. However that may be, we find that contributory negligence was fully submitted in defendant's instructions and it was, therefore, not error of a material nature to fail to cover that matter in plaintiff's said instruction. [Heingold v. United Rys. Co., 308 Mo. 142, 157, 158, which is a later case than Jaquith v. Fayette R. Plumb, 254 S. W. 89, relied upon by defendant.] Of course, plaintiff was under the duty of using the highest degree of care but an examination of the instructions on both sides discloses that the case was tried upon the theory that he was under the duty to use ordinary care. [Burke v. Pappas, 293 S. W. 142.] So far as the points now made against the instructions are concerned, we find no merit in them.

It is insisted that the court erred in giving plaintiff's instruction No. Two which reads as follows:

"The court instructs the jury that if you find from the evidence that Brook street where said Brook street approaches the east entrance to the Twenty-third Street Viaduct, mentioned in evidence, was at and prior to the date of the alleged accident, opened and

maintained for public travel, then you are instructed that it was defendant's duty to keep and maintain the same reasonably safe for ordinary travel thereon; and if the jury believe from the evidence a barrier or other guard was necessary on the west side of said street to protect travelers exercising ordinary care, from the danger of going off said street to the railroad tracks below, mentioned in evidence, then it was the duty of the defendant to cause to be constructed and maintained along said street at said place a barrier or other guard sufficient to give protection against such danger and the question whether such barrier or other guard was necessary, is for your determination; and

"If you find from the evidence that such barrier or guard on the said side of said street was necessary for the reasonable safety of travelers thereon exercising ordinary care, for their own safety, and if you find that such barrier or guard was so erected and you further find that prior to said alleged accident the defendant knew or by the exercise of ordinary care could have known that a portion of said barrier or guard, so erected, had been broken or removed, if you so find, or had become so defective as to be dangerous to persons traveling along said street, using the ordinary modes of travel, if you so find, in time by the exercise of ordinary care and diligence, to have replaced or repaired the same prior to the time of said alleged accident; and if you further find that the plaintiff on the 30th day of December, 1923, while driving same dropping into a hole or depression in said street, if you find there was such hole or depression, causing his steering wheel to break, through no want of care of his own, if you so find, and was carried to and over the curbing of said street, and through a gap in said barrier, if you so find, and fell down and upon the railroad tracks below, and as a consequence thereof was injured, if you so find, your verdict may be for the plaintiff and against the defendant, provided you further find that said hole or depression, if any, in said street, was dangerous to persons traveling thereon, using ordinary modes of travel, and;

"Provided you further find that the plaintiff caused to be served the notice to the mayor mentioned in evidence, in the manner provided in the other instruments herein."

The defendant insists that the first clause of the instruction makes the defendant an insurer of the safety of its streets. That part of the instruction in which it is stated that it was defendant's duty to keep and maintain its streets in a reasonably safe condition for ordinary travel is erroneous; ordinary care to do so meets the requirements of the law. Following the erroneous statement, the several clauses and paragraphs of the instruction are connected by the word "and."

A verdict for the plaintiff was not warranted by the instruction unless the jury found from the evidence that a barrier or other guard was necessary on the west side of the street to protect travelers exercising ordinary care from the danger of going off the street; that such barrier or guard was necessary for the reasonable safety of travelers thereon who were exercising ordinary care for their own safety; that prior to the alleged accident the defendant knew or by the exercise of ordinary care could have known that a portion of said barrier or guard so erected had been broken or removed and had become so defective as to be dangerous to persons traveling said street, using ordinary care, in time, by the exercise of ordinary care and diligence to have replaced or repaired the same before the accident, and that plaintiff, while driving along the street, dropped into a hole or depression in the street, and in consequence was carried to the street below and injured. Each and all of the foregoing is, by the instruction, submitted to the jury as questions of fact. In the respect under consideration the instruction is in legal effect the same as an instruction approved in the case of Reed v. City of St. Joseph, 218 Mo. App. 651, 266 S. W. 330. We will follow the ruling in that case.

Further criticisms of the instruction are made but all of them, with the exception of those hereinafter stated, are predicated upon the theory that all of the questions submitted in the instruction are erroneous because they relate to and are based upon the first clause thereof. Considering the instruction in its entirety, the criticisms thus made cannot be sustained.

It is further criticised as being erroneous and confusing, in that it refers to an alleged accident without definitely identifying which of the two accidents are referred to. A reading of the instruction will disclose that the jury could not have been misled or confused as to the accident in question.

It is claimed that the instruction is so worded as to permit the jury to find that the hole or depression in the street was dangerous to persons traveling thereon, even though such persons may have been grossly negligent. We find nothing in the instruction to support the contention.

It is further claimed the instruction is erroneous because it did not require the jury to pass upon the question of plaintiff's contributory negligence. This insistence is answered by what has been said of a like objection to instruction 1.

It is further claimed the instruction is erroneous, in that it did not require the plaintiff to exercise the highest degree of care. The case was tried by both parties upon the theory that the rule of ordinary care was applicable. By that theory they are bound.

It is further claimed the instruction is erroneous because it did not require the jury to find that the defendant had negligently

failed to perform its duty. The instruction required the jury to find the facts which go to make up the negligence charged in the petition, and the failure to use the word "negligence" does not render it erroneous. [Prash v. Railroad, 151 Mo. App. 410, 415, 132 S. W. 57; McCaffery v. St. Louis, 192 Mo. 144, 156, 90 S. W. 816.] The instruction is not erroneous for the reasons assigned.

In so holding we have had in mind the fact that at the trial defendant sought to show that a barrier was maintained on the west side of the street and that it was in good repair at the time of the accident. The street was under the control of the defendant and the fact that a barrier had been constructed and maintained may be considered in determining whether the defendant recognized that a barrier was necessary. [Bachman v. Railroad Company, 310 Mo. 48, 71, 274 S. W. 764.]

In the circumstances, the question whether a barrier was necessary was for the jury. [Wiggins v. St. Louis, 135 Mo. 558, 37 S. W. 528.]

The defendant criticizes plaintiff's instruction on the measure of damages. We find the instruction proper.

It is claimed the verdict is grossly excessive. Following the accident plaintiff was confined to his bed for seventeen days; his loss in earning and doctor bills was $283.33; his knee became swollen to about twice its normal size, and the injury thereto is probably permanent; he was cut about the forehead, both eyes discolored, a finger crushed, and his back injured; that at the time of the trial he was suffering pain in his back and in his knee, and his doctor said the knee injury "will always give him more or less trouble." The verdict was approved by the trial court. Upon the record, we cannot say it was excessive.

The court, at the defendant's request, gave a series of instructions submitting the case upon the theory advanced in plaintiff's instructions.

No error prejudicial to the defendant is shown, and the judgment is affirmed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.