MARIA PEARCE, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. **NEGLIGENCE: Instructions: Sidewalks: Reasonable Time to Repair.** In an action to recover damages for injuries caused by a defective sidewalk, where the evidence, as a whole, leaves in serious doubt the question as to just when the omission of defendant to repair the sidewalk passed from the field of reasonable care to that of negligence, it is prejudicial error to give an instruction which fails to allow defendant a reason-able time for repairing the defect after receiving actual or constructive notice thereof.

2. ———: ———: ———: ———. The trial court refused defend-ant's instruction predicated on the theory that if plaintiff first tripped accidentally on the sidewalk, and then fell into the defective alley, the city was not liable. *Held,* that where an injury is the joint product of accident and negligence, and would not have occurred in the absence of negligence, the wrongdoer cannot escape liability on the ground that its tort was not the sole producing cause of the injury.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED.

*John G. Park* and *Francis M. Hayward* for appellant.

*E. E. Hairgrove, John A. Daniel* and *J. H. Grier* for respondent.

JOHNSON, J.—Plaintiff, a woman fifty-seven years old, fell on a public sidewalk in Kansas City, was injured, and sued to recover the resulting damages. The cause of action alleged in the petition is negligence of the defendant in the discharge of its duty to construct and maintain the sidewalk in a reasonably safe condition for the use of pedestrians. The defenses pleaded in the answer are a general traverse and a plea of contributory negligence. A trial in the circuit court resulted in a verdict and judgment for plaintiff in the sum of two thousand dollars, and the cause is here on the appeal of defendant.

The injury occurred the night of August 10, 1907, on St. John avenue between Oakley and Drury avenues in a somewhat sparsely settled residence district. None of these streets was paved but nearly two years prior to the injury the city had laid granitoid sidewalks on St. John avenue, the course of which is east and west. An unpaved alley fourteen feet wide crossed St. John avenue midway between Oakley and Drury avenues. The alley formed a break in the granitoid walk and, at first, no crossing was laid nor was the alley graded. A step was left of a foot or more from the end of the sidewalk at the west line of the alley. Some time after the completion of the sidewalk the city put in a board crossing consisting of two planks placed side by side on a plane and of an apron plank on each side to form

an approach from the surface of the alley to the top of the crossing. When first built this crossing which was narrower than the sidewalk was placed in the middle of the sidewalk course but on account of the slope of the alley towards the north, teamsters complained that the crossing formed an obstacle to vehicles using the alley and the city moved the crossing nearer the south line of the sidewalk course. There is evidence tending to show that in time the vehicles passing over the crossing shoved it further south to an extent to leave the north half of the sidewalk course across the alley unprovided with any crossing and with a step off at the west line of the alley which constantly deepened until at the time of the injury it was from eighteen inches to two feet deep.

Plaintiff, accompanied by a neighbor woman and her little boy, approached this crossing from the west, on a dark night. She was unfamiliar with the sidewalk and did not know of the condition of the crossing. She was on the north side of the walk and, according to her evidence, was using ordinary care. Not being able to see the hole at the end of the sidewalk she stepped off into it and fell and broke the *fibula* of one of her legs. There is evidence to the effect that the condition of the place remained unchanged during a period of from four to six months before the injury, but we find substantial evidence supporting a reasonable inference that the cross walk was constantly being pushed further south, thereby enlarging the surface area of the hole into which plaintiff fell and that the hole was gradually being deepened, increasing from day to day the danger to pedestrians using the way on dark nights.

Plaintiff's companion, on direct examination, corroborated her version of the injury, i. e., that, unwittingly, she stepped into the hole, the presence of which was not then obvious to ordinary inspection, but on cross examination the witness was confronted with her deposition taken some time before the trial in which she

stated that plaintiff, in making the step caught her heel on the end of the sidewalk and was thrown down by tripping. She admitted that her memory of the event was better when her deposition was taken than it was at the trial and in answer to the question, "Then she did catch her heel on the east end of the granitoid walk which meets the alley on the west and went down on her knee," replied, "yes, into the alley."

The second instruction given at the request of plaintiff presented to the jury the issue of negligence of defendant not in failing to construct a reasonably safe crossing but in failing "to keep the same in a reasonable state of repair," and in relation to the duty of the city to maintain the way in reasonable repair the jury were told that if defendant "knew or by the exercise of reasonable care could have known of such alleged defective and dangerous condition, if you so find, in time to have repaired the same . . . then your verdict should be for the plaintiff."

Among the instructions asked by defendant and refused by the court is the following: "The court instructs the jury that if you find that plaintiff fell at the alley mentioned in evidence as result of her catching her foot on the edge of the granitoid sidewalk or curbing and by such catching she was thrown over into the alley, then the plaintiff cannot recover and your verdict will be for the defendant city."

Three points are argued by defendant, viz.; 1st, Error in the second instruction given at the instance of plaintiff; 2d, Error in the refusal of defendant's instruction above quoted, and, 3d, Excessiveness of the verdict.

Where the gist of the action is the negligent failure of the city to maintain a public sidewalk in reasonable repair, liability arises only from negligence in not repairing the defect in a reasonable time after the city had actual notice of the defeat or by the exercise of reasonable care and diligence would have received such

notice. [Ballard v. Kansas City, 126 Mo. App. 541, and cases cited.]

The instruction under review omits compliance with this rule since it fails to allow defendant a reasonable time for repairing the defect after receiving actual or constructive notice thereof. There are cases, e. g., Barnes v. St. Joseph, 151 Mo. App. 523, 132 S. W. Rep. 318, where all the evidence shows the dangerous defect continued so long that reasonable minds could indulge in no other conclusion than that the city had notice of its presence in ample time to have repaired it had reasonable diligence been employed and in such cases we consider harmless any error in the definition to the jury of the nature and extent of the duty of the city. But the facts of the present case do not warrant its inclusion among the exceptions to the general rule that definitive instructions given at the request of the plaintiff must give correct definitions. There was room for the jury to conclude that, as originally constructed, the way was reasonably safe and that it lapsed into dangerous unsafety by the action of the elements combined with the grádual results wrought by vehicles using the alley. Just when the omission of the defendant to repair the place passed from the field of reasonable care to that of negligence is a question which the evidence, as a whole, leaves in serious doubt. It might have been six months or only six days before the injury. In such state of case, an instruction of the plaintiff, such as that before us, which attempts to define the liability of the city but leaves out one of the basic elements of liability is erroneous and the error must be deemed prejudicial.

We think the court did not err in refusing the instruction asked by defendant and presenting the hypothesis that plaintiff's fall was caused by tripping on the sidewalk. Had the instruction predicated the direction to return a verdict for defendant on finding that her injury was caused solely by accidental mishap, we would hold it should have been given, since such finding would

negative her allegation that the injury was caused by negligence of defendant. [Wren v. Railway, 125 Mo. App. 604.] But in the situation disclosed her fall could have been due to catching her heel on the end of the sidewalk, an accident for which defendant would not be liable, and still the injury would not have resulted except for the co-operation of defendant's negligence in offering a deep hole for her to fall into,—an act of omission for which defendant would be liable. [Ballentine v. Kansas City, 126 Mo. App. 130; Bassett v. St. Joseph, 53 Mo. 290.] Where an injury is the joint product of accident and negligence and would not have occurred in the absence of negligence the wrongdoer cannot escape liability on the ground that his tort was not the sole producing cause of the injury. An apt illustration of the soundness of this rule is suggested by the facts of the present case. Suppose the hole at the end of the sidewalk has been negligently allowed to reach a depth of ten feet and plaintiff, while in the exercise of reasonable care and not able to discover the danger, had accidently stumbled into the hole and been killed, would anyone have the courage to argue that the grievous wrong of the city in placing a death trap in the way of unwary and innocent pedestrians would be excused in law by the coincidence of a mere accident, in no wise attributable to any lack of care on the part of the pedestrian? And yet just that kind of absurdity is found in the instruction under consideration.

Since the cause must be sent back for another trial on account of the error noted in plaintiff's second instruction, we shall refrain from expressing an opinion on the question of the excessiveness of this verdict. Should it develope at the second trial that the injury, owing to plaintiff's age, is permanent and will be wholly or even partially disabling, we would hold a verdict of two thousand dollars not excessive. As a general thing a simple fracture of the fibula, though painful, is not lasting or serious to a young person, but in old age or late

middle life, a broken bone usually is a very serious injury and if plaintiff has not now fully recovered, she, no doubt, is permanently injured and in that event, a verdict of two thousand dollars could not be considered otherwise than as merely compensatory.

The judgment is reversed and the cause remanded. All concur.