MARY N. SCANLAN, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.*

Kansas City Court of Appeals. April 29, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, Section 640, p. 748, n. 24; Section 819, p. 927, n. 55; 4CJ, Section 2717, p. 771, n. 76; Damages, 17CJ, Section 365, p. 1065, n. 7; Section 428, p. 1102, n. 37; Municipal Corporations, 43CJ, Section 1789, p. 1005, n. 57; Section 1823, p. 1046, n. 88; Section 1825, p. 1050, n. 9; Section 2048, p. 1289, n. 18; Section 2052, p. 1293, n. 48; Section 2056, p. 1304, n. 17; Section 2057, p. 1306, n. 35; Negligence, 45CJ, Section 858, p. 1299, n. 4; Trial, 38Cyc, p. 1691, n. 45.

*F. M. Kennard, R. M. Sheppard* and *Bert S. Kimbrell* for respondent.

*John T. Barker, Marcy K. Brown, Jr.,* and *Arthur R. Wolfe* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $2500. Defendant has appealed.

The facts show that plaintiff was injured on May 27, 1925, by tripping over an iron band located at the west curb of an alley between Main and Walnut streets and on the north side of 12th street, an east and west street in Kansas City. For a week or ten days prior to the time plaintiff fell the sidewalk at that place was in the following condition: In constructing the cement sidewalk at the alley there had been an iron band embedded in the concrete of the walk about four inches wide and a quarter of an inch thick running around the corner and west on 12th street. This band was for the purpose of preventing wear upon the concrete by vehicles using the alley and turning at this point. The top of the band was even with the surface of the concrete sidewalk. At the time it was placed it was held in place by prongs embedded in the concrete. However, vehicles using the alley had run over the edge of the sidewalk at the place in question causing the concrete at the band to be worn away and the prongs to become loose and the band to be away from the sidewalk in the alley for a distance of about half an inch. The

concrete had been worn down to such an extent that at the juncture of the alley and the street it was practically level with the pavement of the street and alley.

The sidewalk was about ten feet in width and beginning with the corner made by the intersection of the alley and street the concrete of the sidewalk had been worn away for half of the width of the walk and the band protruded above the worn part of the walk from an inch to an inch and a half. Between the center of the sidewalk and the building at the north the concrete in the sidewalk was not worn and the band was in place and was flush with the top of the walk. The edge of the sidewalk was worn down along 12th street west of the alley for a distance of eighteen inches or two feet and the iron band was broken loose from the sidewalk along 12th street for a distance of six feet west of the corner of the alley. The top of the sidewalk in its original condition was four or five inches above the pavement of the alley.

Plaintiff fell about 1:45 P. M., of the day in question. Sometime prior to ten A. M., of the morning of the day in question a truck came around the corner of the alley and apparently broke the band near the corner of the alley and bent it up so that it extended two or three inches above the surface of the sidewalk. The bending process began about the center of the sidewalk north and south. Plaintiff testified that after she fell she looked at the place and found that she had fallen near the outer edge of the sidewalk; that the walk was worn back from the band at this point three or four inches. She was unable to tell how deep the worn part of the walk was at this place. She testified that when she was ready to step down into the alley her foot slipped and the heel of her left foot caught on the iron band as she fell pulling off her slipper which was thereafter found wedged between the band and the sidewalk. An employee of a neighboring store twenty minutes or half an hour after plaintiff fell sawed off with a hack saw that part of the iron band that was loose and bent.

Other material facts necessary to be stated in connection with the various points raised by the defendant will be stated in connection with our discussion of those points.

Defendant first insists that the court erred in refusing to sustain its demurrer to the evidence for the reason that plaintiff was guilty of contributory negligence as a matter of law. In this connection defendant argues that when plaintiff fell it was broad daylight; that she was walking toward the intersection of an alley which she knew was there; that she was carrying a bundle about a foot square and taking her time approaching the scene of the fall; that there was nothing in front of her to obstruct her view; that she did not look down where she was stepping, giving as her reason therefor, that she "didn't have time;" that she did not look when she knew

she would be required to take a step down into the alley at this place; that had she looked she would have seen this defect which was "glaringly apparent."

In this connection plaintiff testified that she had never been over this sidewalk before; that she was walking along "in a casual way, working my way through the crowd;" that the street was crowded with people going in both directions; that there were some people passing her from behind on both sides; that she was on the right side of the sidewalk going east, but was not on the edge; that the street was dry; that as she approached the place where she fell she saw the alley in front of her and knew that it was an alley by reason of the open space between the buildings; that when she would step downstairs or take a four or five inch step-off "she ordinarily would look;" that she did not look at this time "because I had to mosey my way through the crowd;" "I had to see that I was going through, people wouldn't bump into me;" that there were people in front of her but she did not know how far away they were.

The witness was asked whether she looked down as she stepped from the sidewalk into the alley, and she answered, "I didn't have time;" that she was not going so fast that she did not have time to look: "Q. Why didn't you have time to look? A. Because my heel"—(Here counsel for the defendant interrupted the answer of the witness, and the question was never answered, by asking another question as follows): "Q. In other words you didn't look where you were going? A. Sure I looked where I was going." The witness testified that if she had known of the presence of the disintegrated concrete of the sidewalk and the iron band that she would have looked and could have seen them. "If I was looking for a spot like that, sure I could."

We cannot say that plaintiff was guilty of contributory negligence as a matter of law in not looking down at the exact place where she was placing her steps. She knew that there was an alley present and had that in mind, but testified that the street was crowded and that her attention was upon getting through the people and that she was required to walk so that they would not "bump into me." Evidently her attention was somewhat on the matter of keeping out of the way of the other people and under the circumstances we would not be justified in going to the extent of declaring plaintiff guilty of contributory negligence as a matter of law in not looking down immediately before her when she came to the alley. [Hinton v. City of St. Joseph, 282 S. W. 1056; Smith v. Kansas City, 184 S. W. 82; Huffman v. City of Hannibal, 287 S. W. 848; Shuff v. Kansas City, 257 S. W. 844; Bianchetti v. Luce, 2 S. W. (2d) 129.]

We have examined the cases cited by the defendant and find them not in point. Most of them are discussed and differentiated in the

case of Wyckoff v. City of Cameron, 9 S. W. (2d) 872, 874, 875, and it is unnecessary for us to enter into any extended discussion of them. The question of contributory negligence is a matter that usually must be determined from the peculiar circumstances of each case and authorities cited in connection with the particular case are only valuable in declaring general propositions of law. However, we might say that there is considerable dispute between the parties as to whether there is conflict between the case of Smith v. Kansas City, supra, and Ryan v. Kansas City, 232 Mo. 471. It is quite apparent that there is no conflict between these two cases, but each one turned upon its own peculiar facts.

It is next contended that the court should have sustained defendant's demurrer to the evidence for the reason that there was no evidence of any actual notice of the presence of the bent up or twisted condition of the iron band, and there was not sufficient time elapsing from the time the truck ran over it, causing its twisted and bent up condition, to the time plaintiff fell to constitute constructive notice to the defendant.

The evidence shows that the iron band had become loosened and protruded somewhat above the worn part of the sidewalk, by reason of the disintegration of the walk caused by traffic running over it, for two weeks prior to the time plaintiff fell, and there is no contention that a period of two weeks was not sufficient time to give defendant constructive notice of that condition in time, by the exercise of ordinary care, to have remedied the situation. There would be no difficulty in disposing of this contention against the defendant if it were not for the peculiar way in which the case is pleaded by plaintiff. Had the petition been founded upon the theory that this situation that had existed for two weeks before the truck bent the band upward constituted negligence and resulted in the twisted and bent up condition the band was in at the time plaintiff fell, then we would have been compelled to hold that the defect and the circumstances were such that the jury could find that the city was bound to take notice that some such circumstance as happened in this case might take place to cause the band to become twisted and bent upward or otherwise made more dangerous even than it had been for the two weeks. [Wasson v. City of Sedalia, 236 S. W. 399.]

However, the petition and plaintiff's instructions submit squarely to the jury constructive notice to the city of the *bent up and twisted condition* of the iron band and there was dispute in the testimony as to the condition of that band, that is, as to its being loosened from the concrete prior to the time the truck ran over it, and the extent of the disintegration of the concrete. The matter of the sidewalk and the iron band being a dangerous situation, such as to put defendant upon notice before the truck ran over it bending it up,

requiring it to remedy the situation, was not submitted to the jury as a matter of negligence on the part of the defendant, nor was such a situation submitted to them as negligence, but merely whether defendant had constructive notice of all of these matters, including the twisting and bending of the iron band.

The evidence shows that the pedestrian travel on 12th street between Main and Walnut streets in the block where plaintiff fell was one of the greatest in the city: that a traffic officer was located a half of a block distant at 12th and Main streets from eight in the morning until eleven at night; that 12th Street between Main and Walnut streets "is very busy every day . . . both as to pedestrian and vehicular traffic;" that the captain of the Police Department of the city in charge of the traffic division would pass along the street where plaintiff fell four or five times during the day, ordinarily on the sidewalk but a great many times he would walk down the middle of the street; that it was the duty of the police officer who walked the beat in which the place in question was situated to pass along 12th street at that place every hour from eight A. M., to four-thirty P. M.

In view of the fact that this was one of the busiest places as regards to travel in the city and the fact that there was evidence tending to show that a very dangerous condition had existed at the point where plaintiff fell, under all the circumstances, for two weeks prior to that time, and one that might naturally result in a truck running over the iron band and cause it to be twisted and bent upward, we think that the jury could find that three hours and forty-five minutes was sufficient time within which the city should have discovered and remedied the situation of the iron band in its bent and twisted condition. Even before this condition existed the band was loose and protruding above the worn place in the sidewalk and the jury could have well found that the situation was already very dangerous to pedestrians and for this reason the city should have constantly watched the place to see that a truck running over it did not make it even more dangerous.

The evidence shows that it was a very simple matter to have removed the iron band as the loosened part was sawed off by an employee of a neighboring store with a hack saw and taken away shortly after plaintiff was injured. Here the defect in the sidewalk existed in a dense business section of a large city, where the city was charged with a much greater amount of diligence in maintaining its streets in a reasonably safe condition for public use than had the defect existed in a place where few people frequented. The city ought to be presumed to have known of a defect therein which would or might reasonably be expected to endanger persons traveling thereon very soon after the coming into existence of such a defect. It is well set-

tled that the question of the density of traffic and other such matters are to be considered in determining a question of this kind. We think it was a question for the jury as to whether the city had sufficient constructive notice. [Carrington v. City of St. Louis, 89 Mo. 208, 213; Harriman v. City of Boston, 114 Mass. 241; Bradford v. Mayor and City Council of Anniston, 92 Ala. 349; Lyman v. Village of Potsdam, 159 N. Y. S. 71.]

It is contended that the court erred in admitting evidence of the injury to plaintiff's teeth and mouth, for the reason that notice of such injuries was not given to the city within ninety days of the casualty as it is claimed is required by provisions of Section 8904, Revised Statutes 1919.

It is true, that in neither the notice or the original petition, which was served upon the Mayor within ninety days after the casualty, was any mention made of the injury to plaintiff's teeth and mouth. However, we do not find that defendant is now in position to make the contention relied upon and we need not pass upon the question as to whether it is otherwise meritorious. There is some controversy between the parties as to what the record shows with reference to this matter, but after a careful examination of it we find that the only exception taken to the action of the court was to the matter of the introduction in evidence of the notice and not to the objection that the notice or the petition did not cover the matter of the injuries to plaintiff's teeth and mouth. In this situation defendant is in no position to complain of the admission of this testimony. [Gann v. Ry., 6 S. W. (2d) 39, 46.]

It is contended that the court erred in failing to instruct the jury to disregard certain medical testimony which the court had ruled out as being incompetent. From an examination of the record we find that counsel for defendant moved to exclude the testimony and there is some question as to whether or not the record is to be construed as showing that the court did not do so. There was no exception to the failure of the court, if any, to so instruct the jury and the defendant is not now in a position to complain. [Gann v. Ry., supra.] If it be the contention of the defendant that the court should have so instructed the jury upon its own motion, then we rule against this contention for the reason that it is well settled that the court is not required to voluntarily instruct the jury. [Browning v. Ry. Co., 124 Mo. 55.]

Complaint is made of the giving of plaintiff's instruction No. 2, for the reason that it tells the jury in effect that the defendant was under the duty to exercise ordinary care to maintain the sidewalk in a reasonably safe condition for the use of the plaintiff. In this connection it is argued that plaintiff was carrying a package a foot square and that defendant was under no definite or greater or less

duty to her than it owed to any member of the public. In the case of Hunt v. St. Louis, 278 Mo. 213, the Supreme Court repudiated the doctrine long existing in this State that the duty of a city is merely to keep its streets and sidewalks reasonably safe for the ordinary and usual mode of travel. [See Bianchetti v. Luce, supra, l. c. 133.] In Hunt v. St. Louis, l. c. 227, it is stated:

"It is the duty of the city to keep its streets in reasonably safe condition for travelers passing over them in any and all modes; provided only, (1) such modes are lawful, and (2) do not of themselves constitute contributory negligence in the traveler to a degree forbidding his recovery." And l. c. 229:

"Beyond this general rule it seems unsafe to go in restricting the use of a public highway in a city or town."

Plaintiff's instruction No. 2 expressly required the jury to find that she was in the exercise of ordinary care for her own safety at the time she fell. We may assume that the jury so found. It seems to us that under the Hunt case, which was afterwards approved in the case of Hanke v. St. Louis, 272 S. W. 933, the only question that remains to be considered is as to whether plaintiff was using the sidewalk in a lawful manner. Defendant does not claim that she was not and there is no evidence tending to so show. Therefore, we think the instruction not erroneous. There is nothing in it to conflict with plaintiff's instruction No. 1 which told the jury that it was the duty of the defendant to exercise ordinary care in maintaining the sidewalk in question "in reasonably safe condition for pedestrians in traveling along and over said sidewalk at said point, in the exercise of ordinary care for their own safety." Reading the two instructions together they tell the jury (1) that the duty in question extended to all pedestrians traveling along the sidewalk in the exercise of ordinary care, and (2) that this extended to and included the plaintiff. We see no conflict between the two. Plaintiff was a pedestrian and defendant was required to keep the sidewalk in a reasonably safe condition for her if she was using it in a lawful manner and was not guilty of contributory negligence.

It is claimed that plaintiff's instruction No. 2 does not submit to the jury that the defendant was under the duty only to repair the defect in a reasonable time after its discovery; that the instruction does not allow the city "a reasonable time in which to repair the defect after notice of the defect to the city." A mere reading of the portion of the instruction criticised on this ground shows the lack of merit in this criticism of it:

"If you further find and believe from the evidence that the defendant, Kansas City, knew, or by the exercise of ordinary care could have known of the said condition of said sidewalk at said point, a sufficient length of time before the injuries to plaintiff, if you find

the plaintiff was injured, by the exercise of ordinary care to have made said sidewalk reasonably safe for the use of the plaintiff and negligently failed so to do.''

It is claimed that plaintiff's instruction No. 3 is erroneous ''in that it does not limit the amount of recovery permitted to plaintiff within the amount asked by the petition. The petition asked damages in the sum of $10,000.'' There is no merit in this contention. [See Campbell v. City of Chillicothe, 175 Mo. App. 436.] While there is authority to uphold defendant's contention the Supreme Court has criticised instructions wherein the amount of damages asked in the petition is mentioned, and most of the authorities cited by the defendant are cases where certain sums were asked in the petition covering specific items of damages and the instruction did not limit the amounts that could be recovered under such allegations of the petition to the amounts mentioned therein.

It is claimed that the verdict is excessive. The evidence shows that plaintiff sustained a fracture of the tip of the ulna of her left arm or the ''Olecranon process of the ulna,'' that is the bone that ''sticks out, the prominent bone when you bend your elbow, it moves around the elbow joint.'' It would appear that the bone had fully healed, but with some limitation of the motion but that the limitation of motion is but little; that there is a knot or knob on the outside and one on the inside of the arm but the elbow is in proper alignment.

Plaintiff's arm was put in a cast for seven weeks and it was treated for about two weeks after the bandage was taken off because her arm was stiff. At the time of the trial she did not ''have any strength in my left arm to speak of.'' She did not have the strength in that arm that she had in her right arm. The left arm still pains her.

When plaintiff fell she struck her teeth upon the box or dress package which she was carrying which was a foot square, loosening four of her lower teeth. About three days after she fell she saw pus coming from these teeth. They were pulled three weeks after she fell. Her mouth continued to be sore and on November 2, 1925, she was taken to a hospital suffering from an inflamed mouth and one other molar was pulled. The following January all of her remaining teeth were removed. The medical testimony shows that plaintiff's teeth were removed because she was suffering from a disease known as Vincent's Angina or trench mouth; that an infection will cause such a disease; that the infection will not get through the mucous membrane and start infection thereunder unless there is a trauma of some nature; that the period of incubation of the infection is not known to the medical profession.

Defendant claims that the medical testimony shows that the Vincent's Angina could not have been caused by plaintiff's fall. How-

ever, while there is ample testimony to show there is other testimony of a substantial nature tending to show the contrary. Dr. Yazel testified that he had seen the disease develop very slowly "over weeks and months;" that whether the disease could develop as long as five months after the reception of the injury would depend on the "condition of the injury." "I suppose if it was not healed at the time, it would be quite probable that it might." A hypothetical question was propounded to him by defendant wherein the history of plaintiff's case from the time she fell was stated, and in which the doctor was asked—"Would you say this case developing in November was the direct result of the fall received in May?" The doctor answered: "Yes, that would be very easy if as a matter of fact, it rather relates to some of the histories we have in such cases."

The evidence shows that plaintiff's teeth were in good condition prior to the time of the receipt of her injury; that the soreness in her mouth continued to get worse until November 2nd, when it was discovered that she was suffering from an "exaggerated case" of Vincent's Angina; that she now weighs from 100 to 105 pounds where formerly she weighed 140 pounds.

We cannot say under the circumstances that the verdict was so excessive as to authorize us to interfere with it.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.