Blanche Leone DAVIS, Respondent,

v.

CITY OF INDEPENDENCE, Missouri, a Municipal Corporation, Appellant.

No. 51915.

Supreme Court of Missouri,
In Banc.

July 11, 1966.

Walter A. Raymond, Kenneth C. West, and Raymond, West & Cochrane, Kansas City, for respondent.

S. Ralph Stone, City Counselor, Thomas D. Cochran, Asst. City Counselor, James S. Cottingham, City Counselor, Thomas D. Cochran, Asst. City Counselor, Independence, for appellant.

EAGER, Judge.

This case was transferred from the Kansas City Court of Appeals by order of this court. It is therefore here as though upon an original appeal; it involves injuries from a fall on a public sidewalk in Independence. The Court of Appeals reversed a judgment for plaintiff in the amount of $6,000 and remanded the case, solely on account of statements made in the argument of plaintiff's counsel which it held to be improper. No point is made by defendant of the sufficiency of the evidence for submission.

On July 17, 1962, at about 2:30 p. m., a clear, hot day, plaintiff was walking east on the sidewalk at 120 E. Maple in front of the Automotive Supply Company, not far from the public square. The sidewalk sloped slightly downward to the east. A pickup truck of the Automotive Supply Company was parked in the driveway leading into that place; the driveway sloped downward across the sidewalk to the street level. The truck blocked the sidewalk, so plaintiff stepped out into the street, walked behind the truck until she had passed it, turned to her left (north) and walked beside the truck until she reached the sidewalk; she then started east again and, on approximately her second step, stepped into a hole and fell. We shall mention her injuries later, but not in detail. Various photographs of the sidewalk, the driveway, and the hole were offered and received in evidence. A clump of grass was growing out of the hole, and the grass was variously described as from one-half inch to two inches in height. The hole was described as about seven inches "wide" and one and one-half inches deep, after the grass was removed. Plaintiff was familiar with the locality, worked at a location just east of the Automotive Supply, and traveled the sidewalk frequently; but not, she said, with a truck blocking the driveway.

We are not concerned with the question of contributory negligence here. Plaintiff testified that the sidewalk at that point was then in a shadow, that she was looking generally in front of her as she normally did, but that she did not see the hole or the grass until after she had fallen. The partners operating the Automotive

Supply Company were also made defendants, but their motion for a directed verdict was sustained at the close of plaintiff's evidence, and no appeal was taken from that order.

In his closing argument counsel for plaintiff stated that the defendants had plaintiff examined by Dr. (Nickolas) Pickard and that "If the plaintiff's statement and the statement of the good mother and the daughter and the injuries and suffering was incorrect, don't you suppose that Dr. Pickard would have been here to tell you after making that examination at their request?" This statement was objected to, and motions to instruct the jury to disregard it and to discharge the jury were made and overruled. In fact, the matter had been discussed with the court and its ruling determined before the argument. The chronology of events was as follows: just before trial it was developed, presumably in chambers, that "there has been but one examination by the defendants" and that defense counsel's "present intent" was to use "the X-ray man, too." Dr. Pickard's name was not specifically mentioned. In the voir dire plaintiff's counsel told the members of the panel that "defendants say they will produce Dr. Nickolas S. Pickard * * *" and asked if any one knew him; one or two did. In the opening statement plaintiff's counsel stated that plaintiff "was examined at the defendant's request by Dr. Fitzgerald, who, I presume, will be here, * * *" It may well be that counsel intended to say or possibly said, "Dr. Pickard," but we do not change transcripts in such particulars. Dr. Pickard did not appear as a witness, and there was no mention whatever of his name in evidence. After the close of all the evidence, counsel for the City asked (in advance) that plaintiff's counsel be precluded from commenting on the nonproduction of the doctor because there was no evidence of any examination by him. Thereupon a long colloquy ensued, counsel for plaintiff called attention to the "pretrial" discussion and the voir dire, and offered (to the court, not for the jury) a copy of the doctor's report; the court refused to receive the exhibit, stated that it thought it had been "stipulated" that Dr. Pickard had examined the plaintiff, and refused to preclude comments on his nonproduction. The case was not reopened for further evidence. Counsel for plaintiff seek also to buttress their position by pointing out indirect admissions in the colloquies and objections to the effect that that had been such an examination.

On these facts we have determined that the argument was improper, but we further find that it was not prejudicial. The Court of Appeals did not consider the latter phase of the question. It is almost axiomatic that arguments of counsel must be based upon the evidence. Wartenbe v. Car-Anth Mfg. & Supply Co., Mo.App., 362 S.W.2d 54; Faught v. Washam, Mo., 329 S.W.2d 588; Reese v. Illinois Terminal R. Co., Mo., 273 S.W.2d 217. Statements made by counsel, upon the voir dire examination or otherwise, are not evidence. Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250; Kettler v. Hampton, Mo., 365 S.W.2d 518. Defendant cites Kettler v. Hampton, Mo., 365 S.W.2d 518, and Murphy v. Tumbrink, Mo. App., 25 S.W.2d 133, as holding, under similar circumstances, that such an argument was improper. It will be unnecessary to discuss those cases, as we find here that it was. We need not analyze in detail all of the statements and colloquies that occurred between court and counsel. The court more or less assumed that the parties had *agreed* that Dr. Pickard had examined plaintiff at the request of all or some of the defendants; perhaps counsel on both sides so understood. But the fact remains that there was *no* evidence before the jury of that fact or of the examination. If a stipulation is to be used as a basis for the jury's consideration it should be introduced in some manner *before the jury*. As already stated, the argument before the jury on this record was improper.

Plaintiff received a verdict of $6,000. Her injuries were rather severe, chiefly to her left elbow; it was necessary to operate on the elbow three or four months after the injury and remove a part of the head of the radius. There was substantial evidence, objective and subjective, of permanent injury and of resulting disabilities. In view of the size of the verdict, we cannot find that the argument complained of had any prejudicial effect upon the amount of damages, and indeed defendant does not make any point of excessiveness. In such situations it has been held that neither improper argument nor improper evidence should be held prejudicial. Bennett v. Kitchin, Mo., 400 S.W.2d 97, 104; Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167; Bobos v. Krey Packing Co., 323 Mo. 224, 19 S.W.2d 630. We consider also the discretion vested in and exercised by the trial court when it overruled the motion for new trial, for the same complaint of the argument was specifically raised there. Defendant asserts that, aside from the amount of the verdict, the argument here may have affected the question of liability, in that it placed upon defendant "a stigma of guilt," based upon its nonproduction of the doctor. The statements of counsel in argument were not inflammatory in nature; he merely said that if the other evidence of plaintiff's condition were not true,—"* * * * don't you suppose that Dr. Pickard would have been here * * *?" Defendant produced *no evidence* of plaintiff's condition, leaving plaintiff's evidence uncontradicted; the argument, in fact, added little to what the jury already knew. The suggestion of defendant that this argument prejudicially affected the merits is "far-fetched," to say the least; in the large number of cases considering the general subject of prejudice, few seem to have even mentioned that possibility. In the case of State ex rel. St. Louis-San Francisco Ry. Co. v. Cox et al., 329 Mo. 292, 46 S.W.2d 849, 852 et seq., it appears that the first opinion of the Court of Appeals mentioned such a possibility in reversing the judgment; on rehearing, it reversed itself and affirmed the judgment, necessarily denying any such contention of prejudice. On certiorari, this court specifically found that the argument made (considerably more extensive than ours) was not prejudicial, emphasizing the discretion resting in the trial court; the court there said, among other things, loc. cit. 854: "* * * the jury must have known that the doctor to whom reference had been made in argument could not have testified to any fact bearing upon the question of liability." We rule that the argument was not prejudicially erroneous.

■ Having determined the first point made, we must look to the other assignments not reached by the Court of Appeals. The next is that counsel for plaintiff overemphasized the matter of liability insurance on the voir dire and that the jury panel should have been discharged. Counsel inquired initially (out of the presence of the jury) for the name of any interested insurance carrier; Mr. O'Laughlin, who was appearing for defendants Reid and Cole, stated that he was employed by Federated Mutual Implement and Hardware Insurance Company, a nonassessable mutual. The court then informed plaintiff's counsel, after some discussion, that he might ask whether any member of the panel or any member of one's immediate family was or had been employed by that company. That was the question which was subsequently asked, and there is no complaint of that. However, before that point was reached, counsel asked if anyone knew Mr. O'Laughlin, appearing for defendants Reid and Cole, who was a member of the law firm of Kuraner, Oberlander, Lamkin, Dingman and O'Laughlin. Two of the jurors responded; a Mr. Pfeiffer and Mr. Bailey. Mr. Pfeiffer stated that Mr. Oberlander had represented him "in a case about four weeks ago," but that the case was settled; Mr. Raymond inquired: "You said that he was your attorney," to which the answer was yes. Mr. Raymond then inquired (of which specific complaint

is made): "Mr. Oberlander personally represented you,"—to which the juror replied: "He represented the insurance company and my boss and I were there." Thereupon, the following occurred: "Mr. Raymond: And did you get pretty well acquainted with him? Mr. Pfeiffer: Well, I talked to him for two days. Mr. Raymond: Would your experience in working with him there embarrass you now in sitting in this case if the facts call for a verdict against the clients of his firm represented by his partner? Mr. Pfeiffer: I don't think so. I think that I didn't know him that well and had no—I know something about the attorney. Mr. Raymond: *His firm represented*—(italics ours) Mr. Pfeiffer: His firm represented Federated Mutual, and that was the insurance part of it. The insurance company is the one that furnishes the lawyer. Mr. Raymond: The only question is, would that prejudice you? Would you be just as open-minded as if you had never seen Mr. Oberlander? Mr. Pfeiffer: No, I don't think that I would be influenced." Mr. Bailey stated that he had a "similar" case about five years ago, and that Mr. Oberlander had represented him "in an insurance case," presumably the one he had just mentioned; that he did not believe that he would be prejudiced. Thereafter, and immediately following the inquiry about employment by Federated Mutual, counsel asked: "Have any of you people ever served as claim agent for any company, corporation, or insurance company where it was your job to investigate and settle claims?" There was no response.

Motions were made to discharge the jury panel, and denied. The specific complaints made here concern: the questions asking if Oberlander "was your attorney," if he "personally represented you," and the partially completed question: "His firm represented * * *"; also, the question asking whether anyone had "served as claim agent for any company, corporation or insurance company * * *" in the investigation and settling of claims. Counsel say that the

obvious purpose of all this was to inject the question of liability insurance into the case far beyond permissible limits. Such matters are frequently troublesome. We note here that no objections were made at the time to any of the questions asked, but counsel waited until the close of all the general questions on voir dire and then moved only for a discharge of the panel.

■ It has long been recognized that counsel may inquire concerning any direct interest which the jurors might have in an insurance company shown to be interested in the litigation. Bunch v. Crader, Mo.App., 369 S.W.2d 768; Grimm v. Gargis, Mo., 303 S.W.2d 43, 74 A.L.R.2d 599. There was nothing wrong with the question which counsel asked with the permission of the court. The difficulty developed in inquiring concerning any acquaintance of members of the panel with members of the law firm representing the individual defendants. That inquiry, properly conducted, was entirely legitimate. In response to a question asked of Mr. Pfeiffer if Mr. Oberlander "personally represented you," the matter of liability insurance was injected. The next few questions and answers followed more or less naturally, but counsel then asked: "His firm represented * * *," and the answer (interrupting the question) named the "Federated Mutual"; this, however, was the first mention of that company, and the answer at that point may have detracted from the effect of the later (legitimate) question asking about possible employment; this, for the reason that the jurors may then have connected the name only with Mr. Pfeiffer's lawsuit.

■ In Grimm v. Gargis, Mo., 303 S.W. 2d 43, it was held that a somewhat similar colloquy did not require a discharge of the jury, since the "subject developed in a natural manner, was not unduly emphasized" and the court saw "no evidence of bad faith." In the present case we feel that counsel exceeded the bounds of propriety when he asked, after being told that Oberlander had represented the juror, and

that he was the juror's attorney, whether he had represented him *personally,* and later — *"His firm represented * * *?"* If the question concerning *personal* representation was intended to ascertain whether Oberlander himself was the lawyer who represented the juror, that question should have been phrased more accurately to that end. However, we consider this subject in its context; counsel and jurors were then referring to other suits and other circumstances; Mr. Oberlander's firm and its individual defendants were discharged at the conclusion of plaintiff's case upon a directed verdict; some of the matter was volunteered by the juror; the verdict is modest in amount and is not claimed to be excessive; and the court was not given an opportunity to interfere and direct the inquiry by any objection made during the questioning, but was merely presented with a motion to discharge the panel after all of the general questioning was concluded. We hold that there is nothing inherently wrong in asking members of the panel if any of them have ever been claim agents or adjusters; the question should not be confined to insurance companies. Gooch v. Avsco, Inc., Mo., 340 S.W.2d 665. It was not so confined here, although the question could have been better phrased. In conclusion, we hold that the trial court did not abuse its discretion when it overruled the motions to discharge the panel, since no actual prejudice is demonstrated. Bunch v. Crader, Mo.App., 369 S.W.2d 768.

■ Next, defendant complains of the giving of Instruction No. 1; this is a very long instruction, constituting *per se* a convincing argument for the adoption of our Missouri Approved Instructions. It is too long to quote; after hypothesizing sundry physical facts, including the existence of a hole in the sidewalk, its size, and the growth of grass, it submitted: "* * * and that the defendant, City of Independence, knew, or by the exercise of ordinary care should have known of said conditions and dangers, in sufficient time by the exercise of ordinary care to have repaired

said sidewalk and remedied said conditions so as to make said sidewalk reasonably safe for pedestrian use prior to July 17, 1962, and that said defendant, City of Independence, failed so to do and was thereby careless and negligent; * * * and that plaintiff walked south into the vehicular portion of said street to circle the rear of said truck; and that she re-entered said sidewalk along the east side of said truck between it and the automobile parked along the north curb; and that as she walked north along the side of said truck shadows impaired her view of said sidewalk; and that as she turned to continue east on said sidewalk she stepped onto the grass covering said hole and her foot sank down and caught in said hole causing her to trip and fall and be injured; * * *."

The first complaint of the instruction is that the requirement that the defendant make the sidewalk reasonably safe "prior to" the date of the injury cast an "undue burden" on the defendant. We are not sure that we fully understand this objection. It is said that: "This placed upon the City the burden of defending the condition of the sidewalk for pedestrian use prior to July 17, 1962." In such situations we do not seek to split days; the phrase was equivalent to one reading "prior to the time of injury," and if defendant had not repaired the hole before July 17, it would not have been likely to do so before 2:30 p. m. on that date; nor did it do so at any time. The jury could not possibly have failed to understand that this phrase imposed *a duty to repair before the injury.*

The next objection is that the instruction failed to require that the city be allowed a "reasonable time" in which to repair the defect, after notice. Counsel cite Pearce v. Kansas City (1911), 156 Mo.App. 230, 137 S.W. 629, and Fullerton v. Kansas City, Mo.App., 236 S.W.2d 364. In Pearce, plaintiff stepped into a depressed alley; the evidence showed that the condition had been worsening recently on account of traffic through the alley; under these circumstances the court apparently considered the

time element as sufficiently important that it justified an express requirement of a "reasonable time" to remedy the defect. In Fullerton, the complaint was that the instruction did not hypothesize that defendant had "sufficient time," after notice, to make the repair. The present instruction contains that requirement; it specifically hypothesized that defendant "knew, or by the exercise of ordinary care should have known of said conditions and dangers, in sufficient time by the exercise of ordinary care to have repaired said sidewalk * *." So far as we are concerned, the allowance of *sufficient time* to repair, by the exercise of *ordinary care,* is equivalent to the allowance of a "reasonable time." Any claimed difference seems to us to be hyper-technical. On this point see: Glasgow v. City of St. Joseph, 353 Mo. 740, 184 S.W.2d 412, 416; Scanlan v. Kansas City, 223 Mo. App. 1203, 19 S.W.2d 522 (on a very similar instruction); Merritt v. Kansas City, Mo. App., 46 S.W.2d 275. In Merritt, the court said at loc. cit. 281: "It appears to be the position of appellant that this instruction required of defendant a repair of the defect at the earliest possible date after it knew or should have known of it and excludes the element of reasonable time. That particular part of the instruction toward which this criticism is made requires the jury to find 'that the defendant knew, or by the exercise of ordinary care could have known of the existence of said hole at said place, if you so find, in time before December 15, 1926, in the exercise of ordinary care to have repaired said hole before said date, but negligently failed to do so.' To require performance of an act in the exercise of ordinary care implies reasonable time within which to do the thing required. Kingsley v. Kansas City, 166 Mo. App. 544, 550, 148 S.W. 170; Scanlan v. Kansas City, 223 Mo.App. 1203, 19 S.W. (2d) 522, 526." We note also that M.A.I. No. 22.04 does not even contain a requirement of "sufficient time," but relies solely on the duty of "ordinary care." The objection is of no real substance and it is disallowed. It is thus unnecessary to consider whether the evidence here fairly showed that the defect had existed long enough to charge defendant with the duty of repair as a matter of law,—within the exception noted in the Pearce case, supra.

Next, it is said that the hypothesization that the hole "was filled with a growth of grass which * * * tended to conceal the presence of the hole * * *," was in conflict with plaintiff's testimony, in that she testified that she did not see the hole or the grass before she fell. No one may confidently say what the plaintiff would have seen had there been an open hole and no grass. But, aside from this, the recital was merely of the physical situation, and the matter was not hypothesized as a basis of liability. The issues of negligence submitted were the presence of the hole (really undisputed), the failure to repair, and plaintiff's alleged contributory negligence; the presence of the grass could well have had some bearing on the length of time the hole had been there.

Lastly, counsel say that the instruction places upon the City the burden of defending against the acts of the individual defendants; this, because of the hypothesis that their truck was standing in the driveway and plaintiff was required to walk around it, and that a shadow was cast on the sidewalk. Again, these recitals merely presented the physical circumstances, and by no possible conception could the City have been made liable for the negligence of anyone else. Instruction No. 2 covered the subject of concurrent negligence and required that plaintiff must have been injured, solely or concurrently, by negligence of the City. Neither the theory nor the propriety of that instruction is questioned here, and this point is without substance.

■ Defendant's last point is as follows: "The Court erred in not allowing the Defendant to give Instruction Number 12 as said instruction was a proper instruction of the law and deprived defendant of a defense and of its right to have the jury consider evidence in its favor." This wholly

fails to comply with the requirement of our Rule 83.05, V.A.M.R. in that it does not state *"wherein and why"* the ruling of the court is claimed to be erroneous. The assignment in the motion for new trial was no better, and is defective under our Rule 70.02. The point will not be considered.

The judgment is affirmed.

All concur.